No. 104,279

NORTHERN NATURAL GAS COMPANY, *Appellant*, v. ONEOK FIELD SERVICES COMPANY, L.L.C.; ONEOK MIDSTREAM GAS SUPPLY, L.L.C.; LUMEN ENERGY CORPORATION; and LUMEN MIDSTREAM PARTNERSHIP, LLC, *Appellees*, v. NASH OIL & GAS, INC. and L.D. DRILLING, INC., *Appellees*.

(296 P.3d 1106)

907

Opinion filed March 15, 2013.

*Mark D. Coldiron*, of Ryan Whaley Coldiron Shandy PLLC, of Oklahoma City, Oklahoma, argued the cause, and *Corey A. Neller* and *Paula M. Jantzen*, of the same firm, and *Richard A. Olmstead*, of Kutak Rock LLP, of Wichita, were on the briefs for appellant Northern Natural Gas Company.

*Dennis C. Cameron*, of Gable & Gotwals, of Tulsa, Oklahoma, argued the cause, and *Tyson D. Schwerdtfeger* and *Bradley W. Welsh*, of the same firm, and *Robert R. Eisenhauer*, of Johnston and Eisenhauer, of Pratt, were on the brief for appellees ONEOK Field Services Company, L.L.C., and ONEOK Midstream Gas Supply, L.L.C.

*David L. Heinemann*, of Shank & Hamilton, P.C., of Kansas City, Missouri, argued the cause, and *S. J. Moore*, of the same firm, and *Brian J. Madden* and *Adam S. Davis*, of Wagstaff & Cartmell, L.L.P., of Kansas City, Missouri, were on the briefs for appellee Nash Oil & Gas, Inc.

*Jim H. Goering*, of Foulston Siefkin LLP, of Wichita, argued the cause, and *Timothy B. Mustaine*, of the same firm, and *Larry E. Keenan* and *Timothy R. Keenan*, of Keenan Law Firm, P.A., of Great Bend, were on the brief for appellee L.D. Drilling, Inc., and *Mark Banner*, of Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., of Tulsa, Oklahoma, were on the brief for appellees Lumen Energy Corporation and Lumen Midstream Partnership, LLC.

*Michael Irvin*, of Manhattan, was on the brief for amicus curiae Kansas Farm Bureau, *Gordon B. Stull*, of Stull Law Office, P.A., of Pratt, was on the brief for amicus curiae Haynesville Surface and Minerals Association, Inc., *Gregory J. Stucky*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, was on the brief for amicus curiae Southwest Kansas Royalty Owners Association, and *David G. Seely*, of the same firm, was on the brief for amicus curiae Eastern Kansas Royalty Owners Association.

*Teresa J. James*, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Overland Park, was on the brief for amicus curiae Southern Star Central Gas Pipeline, Inc.

*Will B. Wohlford*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, and *Jeffery L. Carmichael*, of the same firm, were on the brief for amicus curiae Val Energy, Inc.

The opinion of the court was delivered by

MORITZ, J.: In this conversion action, Northern Natural Gas Company (Northern) claims ONEOK Field Services Company, L.L.C., ONEOK Midstream Gas Supply, L.L.C. (collectively ONEOK), Lumen Energy Corporation, and Lumen Midstream Partnership, LLC (collectively Lumen) wrongfully converted natural gas by purchasing gas from two producers, Nash Oil & Gas, Inc. (Nash) and L.D. Drilling, Inc. (L.D.), which operated wells on land near Northern's underground natural gas storage field. Northern claims that Nash and L.D. were producing and selling Northern's previously injected storage gas and that ONEOK and Lumen unlawfully converted such gas when they purchased it from Nash and L.D. ONEOK and Lumen filed third-party indemnification claims against Nash and L.D. In turn, Nash and L.D. asserted various claims against Northern, ONEOK, and Lumen.

In granting summary judgment in favor of Nash and L.D. on the third-party indemnification claims, the district court determined that K.S.A. 55-1210(c) preserved the common-law rule of capture as to injected storage gas that migrates horizontally beyond property adjoining the certificated boundaries of a gas storage field. Because the wells at issue here were located beyond property adjoining the certificated boundaries of Northern's gas storage field, the district court concluded Northern lost title to its migrating storage gas. Thus, the court concluded Nash and L.D. had title to the gas produced by those wells and purchased by ONEOK and Lumen.

After the district court issued its memorandum decision and order granting summary judgment in favor of Nash and L.D., but before the court journalized its order, Northern received authorization to expand the certificated boundaries of its storage field, thus bringing the wells at issue within the expansion area or onto property adjoining the expansion area. Northern moved the district court to modify its summary judgment ruling in light of the boundary change. In denying that motion, the district court acknowledged the change in circumstances and effectively limited its summary judgment ruling to matters prior to June 2, 2010. The court certified its Order as a final judgment and ordered ONEOK and Lumen to "hold all runs" pending further order of the court.

In this appeal of that summary judgment ruling, Northern primarily challenges the district court's interpretation of K.S.A. 55-1210. Focusing on subsections (a) and (b) of the statute, Northern contends the legislature intended to abolish the common-law rule of capture as to all previously injected storage gas, regardless of how far that gas migrates beyond the certificated boundaries of an injector's gas storage field. But we conclude, as did the district court, that Northern's reading of K.S.A. 55-1210 renders meaningless subsection (c) of the statute, which preserves title in the injector to "natural gas that has migrated to adjoining property or to a stratum, or portion thereof . . . ." Further, Northern's interpretation of the statute ignores the caselaw precipitating enactment of the statute as well as subsequent caselaw interpreting the statute.

We conclude K.S.A. 55-1210 abolished the rule of capture as to natural gas which migrates horizontally within a stratum to adjoining property or vertically to a different stratum, but preserved that rule as to natural gas which migrates beyond those boundaries. Because the natural gas at issue here allegedly migrated horizontally beyond property adjoining Northern's certified storage field, Northern lost title to that gas and it became subject to the rule of capture. By application of the rule of capture, Nash and L.D. possessed title to the gas produced from their wells before June 2, 2010. Therefore, we hold the district court properly dismissed ONEOK's and Lumen's indemnification claims against Nash and L.D and granted summary judgment in favor of Nash and L.D. regarding any alleged acts of conversion occurring before June 2, 2010. As more fully explained below, we remand this case to the district court for any further proceedings necessary to finally resolve this litigation.

## FACTUAL AND PROCEDURAL BACKGROUND

Northern owns and operates an underground natural gas storage facility in Pratt and Kingman counties known as the Cunningham Storage Field (the Field). In the late 1970's, Northern obtained certification from the Kansas Corporation Commission (KCC) and the Federal Energy Regulatory Commission (FERC) to inject and store natural gas in the Viola formation, a geological stratum underlying the Field. In 1996, Northern obtained certification from the KCC and FERC to inject and store natural gas in a second stratum underlying the Field, the Simpson formation.

As of March 2007, the certificated boundaries of the Field encompassed 26,240 acres. In October 2008, FERC authorized Northern to expand the Field by approximately 1,760 acres. FERC specifically indicated its authorization did not permit Northern to inject storage gas in the expansion area; rather, the expansion permitted Northern to address "gas migration problems."

Nash and L.D., Kansas corporations engaged in mineral exploration and production, both operate several oil and gas wells in Pratt County. All of the wells at issue are located approximately 2 to 6 miles and more than a full section beyond the Field's northern

certificated boundary as that boundary existed prior to June 2, 2010.

Pursuant to purchase agreements executed in 2005 and 2009, ONEOK purchased natural gas produced by Nash from these wells. Similarly, in 2008, Lumen entered into a gas purchase contract with L.D. and began purchasing natural gas produced from L.D.'s wells in this area.

In December 2008, Northern filed suit in federal court against L.D., Nash, and Val Energy, Inc., alleging all three companies had caused Northern's storage gas to migrate beyond the certificated boundaries of the Field by creating "pressure sinks." Specifically, Northern argued the companies pumped atypical quantities of groundwater at their wells, thereby creating artificial pressure sinks which caused Northern's storage gas to migrate away from the Field and toward the wells.

Northern further alleged all three defendant companies were producing and selling Northern's previously injected storage gas as their own. Northern sought a declaratory judgment as to title and ownership of the migrated storage gas and/or injunctive relief pursuant to K.S.A. 55-1210 and stated claims for conversion, unjust enrichment, nuisance, tortious interference with a business relationship, and civil conspiracy. See *Northern Natural Gas Co. v. L.D. Drilling, Inc.*, No. 08-1405-WEB, 2009 WL 3739735, at *5 (D. Kan. 2009) (parallel federal litigation).

In September 2009, Northern requested authorization from FERC to expand the Field by an additional 14,420 acres based on Northern's concern that third-party operators, including Nash and L.D., were producing Northern's previously injected storage gas from wells in the proposed expansion area.

While the parallel federal litigation against Nash, L.D., and Val Energy remained pending, Northern filed this action in Pratt County District Court in December 2009 against ONEOK and Lumen alleging they indirectly converted Northern's gas. Specifically, Northern contended Nash and L.D. caused or contributed to the migration of Northern's previously injected storage gas; that Nash and L.D. produced and sold Northern's storage gas to the exclusion of Northern's ownership interests; and that ONEOK and

Lumen bought, transported, and/or resold Northern's storage gas without authorization. In response, defendants ONEOK and Lumen admitted they purchased gas from Nash and L.D., denied Northern's allegations of conversion, claimed various defenses, and asserted third-party indemnification claims against Nash and L.D.

In response to the defendants' third-party indemnification claims, L.D. admitted that if either ONEOK or Lumen purchased gas owned by Northern from L.D., L.D. would be obligated to indemnify the defendants. However, L.D. denied Northern possessed or had any right to the gas L.D. sold to ONEOK or Lumen. L.D. also asserted various affirmative defenses to the third-party claims and asserted its own third-party claims against Northern for tortious interference with a business relationship, trespass, nuisance, slander of title, inverse condemnation, abuse of process, unjust enrichment, and lost production.

Similarly, Nash denied ONEOK's third-party indemnification allegations, asserted two affirmative defenses and third-party crossclaims against ONEOK and Lumen, and sought a declaratory judgment pursuant to K.S.A. 60-1701 *et seq.* to determine the parties' rights to natural gas which had migrated outside Northern's storage field and beyond property adjacent to that field. Nash also asserted a third-party counterclaim against Northern for tortious interference with a business relationship.

Nash and L.D. jointly moved for summary judgment on ONEOK and Lumen's third-party indemnification claims, citing the Underground Storage of Natural Gas Act, K.S.A. 55-1201 *et seq.* In particular, Nash and L.D. relied upon K.S.A. 55-1210(c), which provides that injectors of natural gas do not lose title to gas that has "migrated to adjoining property or to a stratum, or portion thereof, which has not been condemned as allowed by law or otherwise purchased." Nash and L.D. reasoned that because their wells were located beyond property "adjoining" Northern's certificated storage area, Northern lost title to any gas that migrated to Nash's and L.D.'s wells and the common-law "rule of capture" applied to give Nash and L.D. title to any such gas produced from their wells. Further, Nash and L.D. contended that because Northern did not own the gas Nash and L.D. produced and sold

to ONEOK and Lumen, Northern's conversion claim against ONEOK and Lumen failed. Consequently, ONEOK and Lumen's third-party indemnification claims against Nash and L.D. failed, and Nash and L.D. were entitled to summary judgment.

In response, Northern argued it had title to or ownership rights in any migrating storage gas under K.S.A. 55-1210. Northern reasoned that under K.S.A. 55-1210(a) and (b), Northern maintained title to its previously injected storage gas regardless of how far the gas migrated. Alternatively, Northern argued even if the district court determined Northern lacked title to the gas, genuine issues of material fact precluded summary judgment.

The district court issued a comprehensive opinion and order (Order) on April 15, 2010, granting summary judgment in favor of Nash and L.D. "as to all the gas purchased by ONEOK and/or Lumen from any of the Nash or L.D. wells identified by Northern." The court agreed with the interpretation of K.S.A. 55-1210(c) suggested by Nash and L.D. and found that Northern lost title to any storage gas which migrated beyond property adjoining Northern's certified boundaries. Further, the district court held that the rule of capture gave Nash and L.D. title to any such migrating gas.

In so holding, the district court rejected Northern's argument that Nash and L.D. had "interfered" with Northern's ownership rights to the storage gas within the boundaries of the Field in violation of K.S.A. 55-1210(b) by allegedly causing a breach in the storage field's containment features. Further, the district court pointed out that Northern's interpretation of the statute would render section (c) of the statute superfluous. The district court certified the Order as a final judgment under K.S.A. 2010 Supp. 60-254(b), and Northern immediately appealed to the Court of Appeals.

After filing its notice of appeal, Northern filed a motion in district court to clarify or amend the Order, suggesting the district court's rejection of Northern's allegation that Nash and L.D. "interfered" with storage gas within the Field rendered the Order void as contrary to and preempted by the Natural Gas Act, 15 U.S.C. § 717 et seq. (2006). On May 6, 2010, Northern docketed the appeal

in the Court of Appeals and moved to transfer the appeal to this court pursuant to K.S.A. 20-3017.

On June 2, 2010, FERC issued an order (the FERC Order) authorizing Northern to expand the Field by 12,320 acres. As a result, since June 2, 2010, all but two of the wells operated by Nash and L.D. are located either in the expansion area or within 1 mile of that area. Citing the FERC Order, Northern moved for relief from judgment in this case, challenging the district court's factual findings regarding the location of the wells. Northern also subsequently filed a "Complaint in Condemnation" in the United States District Court for the District of Kansas seeking to confirm its legal right to condemn the expansion area authorized in the FERC Order. *Northern Natural Gas v. 9117.53 Acres in Pratt*, 781 F. Supp. 2d 1155, 1158-59 (D. Kan. 2011).

In this case, the district court conducted a hearing on June 30, 2010, to settle the journal entry related to the Order and to address Northern's post-ruling motions. At the hearing, Northern argued the summary judgment ruling should be certified only as a final judgment regarding the conversion claim as it existed prior to June 2, 2010, *i.e.*, before the FERC Order changed the certificated boundaries.

The district court declined to modify the Order regarding "matters prior to June 2nd." In its journal entry, the court (1) indicated the April 15, 2010 order, including the K.S.A. 60-254(b) certification, would serve as the journal entry, (2) ordered ONEOK and Lumen "to hold all runs," *i.e.*, to suspend payments to Nash and L.D. for gas produced from Nash and L.D.'s wells, pending further order of the court, and (3) indicated that all pleadings, documents, and evidence filed in the case were considered as part of the summary judgment record.

We granted Northern's motion to transfer the appeal to this court, and Northern amended its notice of appeal to include "rulings, orders, and judgments made by the District Court up to, and including, June 30, 2010."

On appeal Northern claims the district court erred in granting summary judgment to Nash and L.D. because it: (1) erroneously interpreted K.S.A. 55-1210 to find that Northern lost title to gas

that migrated beyond adjoining property, (2) abused its discretion by refusing to allow Northern further time for discovery, and (3) abused its discretion by denying Northern's motion to modify the summary judgment ruling. Northern further argues the district court's ruling resulted in an unconstitutional taking of Northern's property without just compensation and that the order granting summary judgment is void because it conflicts with and is pre-empted by the Natural Gas Act, 15 U.S.C. § 717 *et seq.*

## NORTHERN HAS STANDING TO INVOKE APPELLATE JURISDICTION

Before turning to the merits of Northern's claims, we initially address the parties' responses to the show cause order issued by this court requesting the parties address whether Northern has standing to invoke appellate jurisdiction.

In Kansas, standing is jurisdictional. *Mid-Continent Specialists, Inc. v. Capital Homes*, 279 Kan. 178, 185, 106 P.3d 483 (2005). We have a duty to question jurisdiction on our own initiative and, when the record discloses a lack of jurisdiction, we have a duty to dismiss the appeal. *State v. Gill*, 287 Kan. 289, 294, 196 P.3d 369 (2008). Whether jurisdiction exists is a question of law subject to unlimited review. *Harsch v. Miller*, 288 Kan. 280, 286, 200 P.3d 467 (2009).

As a general rule, a party seeking to appeal must be aggrieved by the judgment or order from which the appeal is taken. See, *e.g.*, *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1159 (10th Cir. 2011); *City of Cleveland v. Ohio*, 508 F.3d 827, 836-37 (6th Cir. 2007); *St. Paul Fire Ins. v. Univ. Builders Supply*, 409 F.3d 73, 83 (2nd Cir. 2005). However, a party ordinarily has no standing to appeal from a judgment or order that dismisses a claim to which it was not a party. *City of Cleveland*, 508 F.3d at 836; *St. Paul Fire*, 409 F.3d at 83.

Here, Northern appeals from the district court's grant of summary judgment in favor of third-party defendants Nash and L.D. on ONEOK's and Lumen's third-party indemnification claims against them. After oral arguments, we issued a show cause order requesting the parties address whether Northern, as plaintiff, has

standing to appeal from the Order dismissing ONEOK's and Lumen's third-party indemnification claims even though the Order did not explicitly dismiss Northern's conversion claim against ONEOK and Lumen.

After reviewing the record and considering the parties' responses to the show cause order and oral argument as to this issue, we are persuaded that Northern is sufficiently "aggrieved by" the district court's summary judgment ruling to appeal that ruling. Specifically, we are persuaded that the district court's ruling primarily was based on its determination that Northern had no ownership rights in the gas produced by Nash and L.D. As the parties suggest, although the district court failed to explicitly dismiss Northern's conversion claim against ONEOK and Lumen when it granted summary judgment in favor of Nash and L.D. on ONEOK and Lumen's third-party indemnification claims, that was the practical effect of the court's ruling. Accordingly, we conclude Northern has standing to appeal.

## THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT IN FAVOR OF NASH AND L.D.

In this appeal, Northern primarily challenges the district court's interpretation of K.S.A. 55-1210, maintaining its argument that the statute abolished the rule of capture as to all previously injected storage gas regardless of how far that gas migrates beyond the boundaries of a certificated underground storage field.

In contrast, Nash, L.D., and Lumen contend K.S.A. 55-1210 abolished the rule of capture regarding storage gas that remains within the certificated boundaries of an underground storage field or migrates to an adjoining property or to a stratum or portion thereof, but retained the rule of capture as to storage gas that migrates outside of those limitations.

*Northern's primary argument requires interpretation of K.S.A. 55-1210:*

Thus, the primary issue we must resolve is whether K.S.A. 55-1210 abolished the common-law rule of capture as to previously injected storage gas that migrates beyond property adjoining an

underground storage field or to a stratum or portion thereof. Resolution of this question requires statutory interpretation and, to some extent, consideration and application of prior caselaw. Accordingly, our review is unlimited. *Johnson v. Brooks Plumbing*, 281 Kan. 1212, 1213-14, 135 P.3d 1203 (2006). Nonetheless, our review is guided by several well-established principles of statutory construction.

*Rules of statutory construction.*

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 607, 214 P.3d 676 (2009). We first attempt to ascertain legislative intent by reading the plain language of the statutes and giving common words their ordinary meanings. *Padron v. Lopez*, 289 Kan. 1089, 1097, 220 P.3d 345 (2009). When a statute is plain and unambiguous, we do not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. But when the statute's language or text is unclear or ambiguous, we "employ canons of construction, legislative history, or other background considerations to divine the legislature's intent and construe the statute accordingly." *Stewart Title of the Midwest v. Reece & Nichols Realtors*, 294 Kan. 553, 564-65, 276 P.3d 188 (2012).

However, even if the language of the statute is clear, we must still consider various provisions of an act in pari materia with a view of reconciling and bringing those provisions into workable harmony if possible. *Southwestern Bell Tel. Co. v. Beachner Constr. Co.*, 289 Kan. 1262, 1270, 221 P.3d 588 (2009). Additionally, we must construe statutes to avoid unreasonable or absurd results, and we presume the legislature does not intend to enact useless or meaningless legislation. 289 Kan. at 1269; *State v. Le*, 260 Kan. 845, 850, 926 P.2d 638 (1996).

*Historical context of K.S.A. 55-1210.*

While it is helpful to place the statute at issue, K.S.A. 55-1210, in historical context, we need not extensively undertake that task here, as we did in *Northern Natural Gas Co. v. Martin, Pringle, et al.*, 289 Kan. 777, 788, 217 P.3d 966 (2009). Nevertheless, for ease

of reference, we will undertake an abbreviated discussion of the statute's historical context.

In *Martin, Pringle*, we described the evolution of the "ownership in place theory" and the "rule of capture" in Kansas. As we explained, under the ownership in place theory, a Kansas landowner historically has a present estate in the oil and gas in the ground. But when that oil and gas is produced and severed from the land, it becomes personal property of the producer. 289 Kan. at 788. Further, traditionally, under the rule of capture, a landowner with a present estate in natural gas in the ground loses title to any gas that "escapes" or migrates away from the landowner's property. Instead, that migrating gas becomes the personal property of the first person to produce the gas. 289 Kan. at 788 (discussing the rule of capture and citing *Anderson v. Beech Aircraft Corp.*, 237 Kan. 336, 342, 699 P.2d 1023 [1985]); see also 1 Kuntz Law of Oil and Gas §§ 4.1 and 4.2 (1987) (discussing the rule of capture).

In 1951, the Kansas Legislature passed the Underground Storage of Natural Gas Act, K.S.A. 55-1201 *et seq.* (the Storage Act) to promote the underground storage of natural gas. The Storage Act defined, *inter alia*, the terms "underground storage" and "natural gas public utility" and established procedures for natural gas public utilities to appropriate property for underground storage facilities. See K.S.A. 55-1201; K.S.A. 55-1205.

As passed in 1951, the Storage Act was silent regarding its impact, if any, on the rule of capture as to injected storage gas. But nearly 30 years ago, this court extended the rule of capture to determine ownership of previously injected storage gas. See *Anderson*, 237 Kan. 336, *superseded by statute as stated in Martin, Pringle*, 289 Kan. 777. In *Anderson*, we held that the owners of land and of an oil and gas lease could produce and hold title to non-native gas from their land, even though that gas previously had been purchased, injected, and stored in a common reservoir by another landowner having no license, permit, or lease covering the land from which the nonnative gas was produced. 237 Kan. at 348.

Although the entity that stored the gas in *Anderson*, Beech Aircraft, was not a natural gas public utility, this court extended *Anderson*'s holding to public utilities in *Union Gas System, Inc. v.*

*Carnahan*, 245 Kan. 80, 774 P.2d 962 (1989), *superseded by statute as stated in Martin, Pringle*, 289 Kan. 777. There, Union, a natural gas public utility, acquired abandoned wells and obtained gas storage leases from area landowners before it began injecting and storing natural gas in the Squirrel formation in Montgomery County. Eventually, Union's storage gas migrated horizontally within that formation to adjoining farmland where Union had not secured any ownership rights. There, individuals who had obtained oil and gas leases from the adjoining landowners drilled wells and tapped into the Squirrel formation. They produced significant quantities of gas consisting largely of Union's storage gas and then ultimately sold some of that gas back to Union.

Union eventually secured a certificate from the KCC, pursued condemnation proceedings, and secured the wells on the adjoining property. However, this court in *Union* did not permit Union to fully recover for the gas which had been produced from those wells. Instead, the court held that the rule of capture as discussed in *Anderson* applied to give the producers ownership of the gas until January 13, 1986, the date Union obtained KCC certification. *Union Gas*, 245 Kan. at 86-87.

*Enactment of K.S.A. 55-1210.*

In response to the common law as it had developed in *Union Gas* and *Anderson*, the legislature enacted in 1993 the statute at issue in this case, K.S.A. 55-1210. In *Martin, Pringle*, we succinctly described the state of the law preceding the effective date of the statute:

"[P]rior to July 1, 1993, the landowners adjoining Northern's underground gas storage area possessed the legal right to produce and keep the injected gas which had migrated onto their property, unless and until Northern obtained a certificate to expand its storage area onto their land and paid them for that privilege through a condemnation action. K.S.A. 55-1210 abolished that right, as well as permitting migrating gas to trespass upon adjoining land." 289 Kan. at 791.

K.S.A. 55-1210 provides:

"(a) All natural gas which has previously been reduced to possession, and which is subsequently injected into underground storage fields, sands, reservoirs and facilities, whether such storage rights were acquired by eminent domain or oth-

erwise, shall at all times be the property of the injector, such injector's heirs, successors or assigns, whether owned by the injector or stored under contract.

"(b) In no event shall such gas be subject to the right of the owner of the surface of such lands or of any mineral interest therein, under which such gas storage fields, sands, reservoirs and facilities lie, or of any person, other than the injector, such injector's heirs, successors and assigns, to produce, take, reduce to possession, either by means of the law of capture or otherwise, waste, or otherwise interfere with or exercise any control over such gas. Nothing in this subsection shall be deemed to affect the right of the owner of the surface of such lands or of any mineral interest therein to drill or bore through the underground storage fields, sands, reservoirs and facilities in such a manner as will protect such fields, sand, reservoirs and facilities against pollution and the escape of the natural gas being stored.

"(c) With regard to natural gas that has migrated to adjoining property or to a stratum, or portion thereof, which has not been condemned as allowed by law or otherwise purchased:

(1) The injector, such injector's heirs, successors and assigns shall not lose title to or possession of such gas if such injector, such injector's heirs, successors or assigns can prove by a preponderance of the evidence that such gas was originally injected into the underground storage.

(2) The injector, such injector's heirs, successors and assigns, shall have the right to conduct such tests on any existing wells on adjoining property, at such injector's sole risk and expense including, but not limited to, the value of any lost production of other than the injector's gas, as may be reasonable to determine ownership of such gas.

(3) The owner of the stratum and the owner of the surface shall be entitled to such compensation, including compensation for use of or damage to the surface or substratum, as is provided by law, and shall be entitled to recovery of all costs and expenses, including reasonable attorney fees, if litigation is necessary to enforce any rights under this subsection (c) and the injector does not prevail.

"(d) The injector, such injector's heirs, successors and assigns shall have the right to compel compliance with this section by injunction or other appropriate relief by application to a court of competent jurisdiction."

*Interpretation of K.S.A. 55-1210.*

A few years after the enactment of K.S.A. 55-1210, this court considered the meaning of the term "adjoining property" in section (c) as well as the constitutionality of the testing provisions of K.S.A. 55-1210(c)(2), (c)(3), and (d). *Williams Natural Gas Co. v. Supra Energy, Inc.*, 261 Kan. 624, 931 P.2d 7 (1997). In that case, Williams operated a natural gas storage field in Elk, Montgomery, and Chautauqua counties and stored natural gas in the Burgess Sand

formation. At some point, Williams became concerned that Supra Energy, which leased property in Elk County, was producing gas that had migrated horizontally from Williams' storage field. When the parties could not agree on testing, Williams sought and obtained an injunction pursuant to K.S.A. 55-1210(d) and K.S.A. 60-901.

On appeal, Supra argued the testing provisions of K.S.A. 55-1210(c)(2) and (3) were unconstitutional, in part, because the term "adjoining" was vague. This court disagreed, finding the term "adjoining" referred to "any section adjacent to a storage field." 261 Kan. at 630. Specifically, we held that any section of land which touched a section containing a storage field "adjoined" the storage field. We pointed out that this definition was consistent with prior caselaw defining the term "adjoining" as " 'being contiguous or touching,' " and we noted that "a person exercising common sense would understand the term 'adjoining' in" K.S.A. 55-1210(c)(2). 261 Kan. at 630 (citing *State, ex rel., v. Bunton*, 141 Kan. 103, Syl. ¶ 1, 40 P.2d 326 [1935]). Ultimately, the court upheld the constitutionality of K.S.A. 55-1210(c)(2), (3), and (d). 261 Kan. at 631.

Next, in *Hayes Sight & Sound, Inc. v. ONEOK, Inc.*, 281 Kan. 1287, 136 P.3d 428 (2006), we considered the statute's provision for recovery of attorney fees, K.S.A. 55-1210(c)(3). There, natural gas migrated from underground storage caverns and caused explosions, resulting in two fatalities and extensive property damage to plaintiffs' businesses. The plaintiffs eventually were successful in their negligence action against ONEOK, the owner of the migrating storage gas, and were awarded damages. They then sought attorney fees under K.S.A. 55-1210(c).

In reversing the trial court's denial of plaintiffs' request for attorney fees, the *Hayes* court concluded that subsection (c)(1)

"does not create title in the natural gas. Instead, it provides *some* protection to the titleholder when gas migrates. Likewise, subsection (c)(3) does not create a cause of action but rather declares that damages will be available to substratum or surface owners as provided by law and provides for the recovery of attorney fees, expenses, and costs. The negligence action prosecuted by [plaintiffs] in the present action, although not a statutorily created cause of action, is 'provided by law' for compensation for damage to the surface, as expressly secured by subsection (c)(3)." (Emphasis added.) 281 Kan. at 1329.

Curiously, the court in *Hayes* was not swayed by ONEOK's argument that the last clause of K.S.A. 55-1210(c)(3), which expressly states that compensation is recoverable under that section only "if litigation is necessary to enforce any rights under this subsection (c) and the injector does not prevail," rendered the statute inapplicable under the circumstances of that case.

More recently, in *Martin, Pringle,* this court accepted a certified question from the United States District Court for the District of Nebraska, where Northern was pursuing a malpractice claim against its former law firm, Martin, Pringle, Oliver, Wallace & Bauer, L.L.P. We were asked to decide whether an injector of natural gas into underground storage loses title to such gas when it migrates prior to the effective date of K.S.A. 55-1210 to "adjoining property or to a stratum, or portion thereof, which has not been condemned as allowed by law or otherwise purchased." K.S.A. 55-1210(c).

According to the stipulated facts in *Martin, Pringle*, gas injected by Northern into its underground storage in the Cunningham Field had migrated beyond Northern's certificated northern boundaries, and Trans Pacific, which owned two wells on property adjacent to Northern's storage field, produced that gas. We answered the certified question affirmatively, concluding the statute applied only prospectively. 289 Kan. at 791. Thus, as in *Union Gas*, Northern's failure to pursue condemnation of the adjoining property prior to the effective date of the statute, July 1, 1993, meant that Trans Pacific had "a right, title, and interest in and to the gas which had migrated to the adjoining property as of that date." *Martin, Pringle*, 289 Kan. at 791.

To summarize, before the enactment of K.S.A. 55-1210, the rule of capture gave landowners adjoining an underground storage area the right to produce and keep injected gas which migrated onto their property "unless and until [the injector] obtained a certificate to expand its storage area onto their land." *Martin, Pringle*, 289 Kan. at 791; see also *Union Gas*, 245 Kan. at 88 (noting that injector's gas was no longer subject to rule of capture as of date injector received KCC certification). But effective July 1, 1993, K.S.A. 55-1210 abolished the right of capture as to storage gas that migrates

to adjoining property. *Martin, Pringle,* 289 Kan. at 791-92. This brings us to the present action.

*The plain language of K.S.A. 55-1210 supports the district court's ruling.*

Here, applying K.S.A. 55-1210(c) and the definition of "adjoining property" from *Williams,* the district court determined that Nash's and L.D.'s wells, located 2 to 6 miles from the certificated boundary of the Field, were not on adjoining property. Consequently, the court concluded any migrating storage gas produced from those wells did not fall within K.S.A. 55-1210(c)'s provision for "gas that has migrated to adjoining property or to a stratum, or portion thereof, which has not been condemned as allowed by law or otherwise purchased." Instead the district court concluded that the migrating gas remained subject to the rule of capture.

Relying on K.S.A. 55-1210(a) and (b), Northern maintains that the statute grants injectors of natural gas, like Northern, an unqualified, unlimited right to maintain title to all injected gas regardless of where that gas migrates or ultimately is found. Northern argues the statute expressly abolished the rule of capture as to migrating storage gas. Or, as L.D. characterizes Northern's argument: "In Northern's view, it is entitled to follow and recover for every molecule of gas it can prove it injected into underground storage against any producer of that gas (or any purchaser from such producer), even if the gas has migrated to wells at the ends of the earth."

While the simplicity of such an "ends of the earth" premise is seductive, it is fatally flawed in several respects. As discussed below, Northern's interpretation of K.S.A. 55-1210 ignores several significant phrases in sections (a) and (b) of the statute and would render section (c) superfluous if given effect.

*K.S.A. 55-1210(a)*

Section (a) of the statute provides:

"All natural gas which has previously been reduced to possession, and which is subsequently injected into underground storage fields, sands, reservoirs and facilities, whether such storage rights were acquired by eminent domain or otherwise, shall at all times be the property of the injector, such injector's heirs, suc-

cessors or assigns, whether owned by the injector or stored under contract." K.S.A. 55-1210(a).

Northern's argument regarding the "plain and unambiguous" language of section (a) bears repeating in full, as much for what it omits as for what it includes:

"Subsection (a) clearly conveys the Legislature's intention that *all* natural gas that has previously been reduced to possession and then injected into the ground for storage shall *at all times* be the property of the injector. [Citation omitted.] The District Court erred by holding that subsection (a) applies only to gas located within the certificated boundaries of a storage field because the plain language of subsection (a) does not support the District Court's holding. Nothing in subsection (a) requires that the gas be injected into a *certificated* storage field. [Citation omitted.] Instead, subsection (a) expressly states that *all* natural gas which has previously been reduced to possession and injected into underground storage field, sands, reservoirs, and facilities is owned by and remains the possession of the injector *at all times*. The District Court's interpretation is error because it requires the Court to add language to subsection (a) not found in the statute."

As Northern points out, the first clause of K.S.A. 55-1210(a) refers to "[a]ll natural gas which has previously been reduced to possession, and which is subsequently injected into underground storage fields, sands, reservoirs and facilities." Perhaps recognizing that this clause, standing alone, could be construed to refer simply to gas which has been reduced to possession, is injected into a storage field, and remains in that storage field, Northern proceeds directly to the phrase "shall *at all times* be the property of the injector, such injector's heirs, successors or assigns." (Emphasis added.) K.S.A. 55-1210(a). Northern reasons that this italicized phrase reflects the legislature's intention that once storage gas is injected, it remains the property of the injector regardless of when or how far the gas migrates.

Northern's analysis is flawed in several respects. First, Northern omits and ignores the phrase "whether *such storage rights* were acquired by eminent domain or otherwise." (Emphasis added.) K.S.A. 55-1210(a). Second, Northern essentially interprets the phrase "at all times" to mean "at all places." Finally, Northern omits and ignores the last clause of the section: "whether owned by the injector or stored under contract." K.S.A. 55-1210(a).

The phrase "whether *such storage rights* were acquired by eminent domain or otherwise" clearly modifies the phrase preceding it,"[a]ll natural gas which has previously been reduced to possession, and which is subsequently injected into underground storage fields, sands, reservoirs and facilities . . . ." (Emphasis added.) K.S.A. 55-1210(a). Thus, as Nash and L.D. suggest, section (a) simply clarifies that natural gas which is reduced to possession and injected into an underground area in which the injector has *storage rights* is not subject to the rights of owners of the surface or mineral interests in the land above those storage areas.

Further, Northern inexplicably suggests that the phrase "shall *at all times* be the property of the injector" means that once gas is reduced to possession and injected into an underground storage area, the injector's ownership has no limits—temporal, geographic, or otherwise—regardless of when or where that gas strays. But that interpretation requires that we ignore much of the remainder of section (a) and its application to gas that is stored pursuant to previously acquired "storage rights." Moreover, we are unwilling to substitute the geographic qualifier "at all places" for the temporal qualifier "at all times" in order to achieve the meaning asserted by Northern.

Finally, Northern's expansive interpretation of section (a) omits the last phrase of section (a), "whether owned by the injector or stored under contract." Again, this phrase clearly pertains to the gas which is "the property of the injector" and clarifies that section (a) applies to stored gas, whether owned by the injector or stored under contract.

In short, section (a) gives an injector title to gas injected into its legally recognized storage area. By its plain terms, however, section (a) does not apply to gas that has migrated outside the injector's certificated storage area.

*K.S.A. 55-1210(b)*

Northern also suggests that the language of section (b) supports its expansive interpretation of section (a). Section (b) provides:

"In no event shall *such gas* be subject to the right of the owner of the surface of such lands or of any mineral interest therein, under which such gas storage

fields, sands, reservoirs and facilities lie, *or of any person*, other than the injector, such injector's heirs, successors and assigns, to produce, take, reduce to possession, either by means of the law of capture or otherwise, waste, *or otherwise interfere* with or exercise any control over such gas." (Emphasis added.) K.S.A. 55-1210(b).

Northern concedes that section (b) primarily restricts the rights of interest owners of the surface lands under which injected gas lies. Nevertheless, Northern ascribes broader meaning to the statute based on the two disjunctive phrases italicized above. Specifically, Northern contends Nash and L.D. created "pressure sinks" which caused storage gas to migrate outside Northern's certificated area and toward Nash's and L.D.'s wells. Based on these alleged activities, Northern concludes Nash and L.D. are "persons" who have "otherwise interfere[d]" with Northern's possession of the gas.

Northern's "interference" argument, while initially appealing, is unpersuasive for two reasons. First, the italicized portion of section (b) upon which Northern relies, like the remainder of section (b), applies only to "such gas." Unquestionably, the phrase *"such gas"* in section (b) references the gas described in section (a) above. Second, as we have determined, the gas described in section (a) does *not* include gas which has migrated beyond the certificated boundaries of the storage site.

Additionally, we perceive a disconnect between Northern's allegations of conversion against ONEOK and Lumen and Northern's allegations of "interference" against Nash and L.D. based on the language of section (b). We note that in the parallel federal litigation described above, the United States District Court for the District of Kansas eventually granted Northern's motion for a preliminary injunction, ordering Nash and L.D. to shut in certain wells and cease production by February 2011. The district court in that case relied, in part, on the likelihood that Northern might succeed on its nuisance claim against Nash and L.D., a claim which arises from the same "pressure sink/interference" argument Northern presses here. *Northern Natural Gas Co. v. L.D. Drilling, Inc.*, 759 F. Supp. 2d 1282 (D. Kan. 2010), *aff'd* 697 F.3d 1259 (10th Cir. 2012).

Although the United States Court of Appeals for the Tenth Circuit affirmed the district court's order granting Northern's motion for a preliminary injunction, the panel recognized a distinction that Northern attempts to erase in this case. Specifically, the Tenth Circuit reasoned that the district court in this case (the state case) applied K.S.A. 55-1210 to reject Northern's conversion claim and noted:

"The state case addressed whether Northern had still had title to the natural gas that migrated several miles away from the Field. Here, on the other hand, the issue is whether Defendants' production from their wells in the expansion area unreasonably interfered with Northern's storing its natural gas in the Field. Therefore, the state court's decision in the state-court proceeding cannot make Defendants' interference with Northern's storage field reasonable." *Northern Natural Gas Co. vs. L.D. Drilling, Inc.*, 697 F.3d 1259, 1272 (10th Cir. 2012).

The Tenth Circuit further noted that the district court's ruling in the state case regarding Northern's claims of "interference" did not have preclusive effect in the parallel federal litigation because the district court's "interference determination" in the state case "was not made in the context of a nuisance claim, but was instead premised on Kan. Stat. § 55-1210(b), which the state court ruled was limited to gas migrating to 'adjoining property.' [Citation omitted.] That limitation does not apply to this nuisance claim." 697 F.3d at 1272 n.7.

To summarize, we agree with the district court's ruling in this case that the first two subsections of K.S.A. 55-1210 govern ownership rights to previously injected storage gas that remains within a designated underground storage area. Under K.S.A. 55-1210(a) and (b), Northern retains title to its previously injected storage gas that has been *injected into* the underground storage area and that lies *within* the Field. But the question here is whether Northern retained title to previously injected storage gas that migrated at least 2 to 6 miles beyond the certificated boundaries of the Field to Nash's and L.D.'s production wells.

To answer that question, we must look to K.S.A. 55-1210(c). As we discuss more fully below, section (c) preserves the rule of capture except as to gas that has migrated horizontally to adjoining property or vertically to a stratum or portion thereof not leased or

condemned by the injector. Simply stated, section (c) makes no exception for gas that has migrated beyond adjoining property based on some nonnatural means or as a result of some affirmative action by the ultimate producer of such gas. While such an exception may well be an appropriate additional basis for permitting an injector to retain title to migrating gas, that is an exception for the legislature to make, not this court. See Note, *Underground Fences and Storage Gas Migration: K.S.A. Section 55-1210 and Legislating Property Rights to Injected Natural Gas*, 50 Washburn L.J. 177, 197 (Fall 2010) (suggesting changes to K.S.A. 55-1210 which "encourage delineation of storage field boundaries rather than further litigation").

*K.S.A. 55-1210(c)*

Unlike sections (a) and (b), section (c) specifically addresses ownership of storage gas that has migrated outside the designated underground storage area. See *Hayes*, 281 Kan. at 1329 (explaining that section [c] "does not create title in the natural gas," but instead "provides some protection to the titleholder when gas migrates").

Section (c) contains three subsections. The introductory language of section (c) limits application of those three subsections to "natural gas that has migrated to adjoining property or to a stratum, or portion thereof, which has not been condemned as allowed by law or otherwise purchased." Subsection (c)(1) provides that an injector "shall not lose title to or possession of *such gas* if such injector . . . can prove by a preponderance of the evidence that *such gas* was originally injected into the underground storage." (Emphasis added.) K.S.A. 55-1210(c)(1). Subsection (c)(2) reinforces the limited application of subsection (c)(1) by providing an injector with a statutory right to test wells on *"adjoining property"* for the presence of the injector's storage gas. (Emphasis added.) K.S.A. 55-1210(c)(2). Subsection (c)(3), which is not at issue here, provides for compensation to the surface owner for damage to the surface or substratum and for costs and expenses associated with litigation if the injector·does not prevail.

Northern contends that section (c)'s introductory clause limiting its application to natural gas *"that has migrated to adjoining prop-*

*erty or to a stratum, or portion thereof,* which has not been condemned as allowed by law or otherwise purchased" does not identify a "geographic limit to an injector's right to show title to migrated storage gas." Instead, Northern reasons that section (c) applies to gas which has migrated (1) to adjoining property, (2) horizontally or vertically to a stratum in which the injector does not have storage rights, or (3) horizontally or vertically to a portion of a stratum in which the injector does not have storage rights. Northern concedes that applying its interpretation, gas which migrates beyond the certificated boundaries of a storage field—whether the gas migrates 1 mile or 1 million miles—remains the property of the injector. Northern points out that this interpretation is consistent with its expansive interpretation of sections (a) and (b).

But Northern's argument as to the reach of section (c) relies heavily upon Northern's flawed interpretation of sections (a) and (b). As the district court noted, Northern's argument regarding sections (a) and (b) renders superfluous the introductory language limiting section (c)'s application to gas "that has migrated to adjoining property or to a stratum, or portion thereof, which has not been condemned." K.S.A. 55-1210(c). Simply stated, if the legislature intended to protect *all* gas that migrates outside certificated boundaries, there would be no need to specify that section (c) applies to "to natural gas that has migrated *to adjoining property or to a stratum, or portion thereof,* which has not been condemned as allowed by law or otherwise purchased." (Emphasis added.) K.S.A. 55-1210(c). See *Southwestern Bell Tel. Co. v. Beachner Constr. Co.,* 289 Kan. 1262, 1269, 221 P.3d 588 (2009) (providing appellate courts presume the legislature does not intend to enact meaningless legislation).

Additionally, Northern's interpretation of section (c) ignores this court's definition of the term "adjoining property" in *Williams.* By defining the phrase "adjoining property" to mean "any section of land which touch[es] a section containing a storage field," the *Williams* court implicitly rejected any suggestion that the phrase is meaningless or superfluous. *Williams Natural Gas Co. v. Supra Energy, Inc.,* 261 Kan. 624, 630, 931 P.2d 7 (1997). And, it does

not escape our attention that despite several opportunities since *Williams* to modify or define the term "adjoining property," the legislature has not chosen to do so. See *Hayes*, 281 Kan. at 1329 (finding that subsection [c][1] provides "some protection" to the injector when gas migrates).

Further, if Northern is correct that an injector retains title to migrating gas regardless of where or how far that gas migrates away from its certificated boundaries, the legislature would have had no reason to include the language in subsection (c)(1) specifically indicating that an injector *"shall not lose title to or possession of* such gas if such injector . . . can prove by a preponderance of the evidence that such gas was originally injected into the underground storage." (Emphasis added.) K.S.A. 55-1210(c)(1). Clearly, this provision anticipates that if the reverse occurs, *i.e.*, the injector cannot prove that gas which migrated to adjoining property or to a stratum or portion thereof originally was injected into the underground storage, the injector *loses* title to the migrating gas.

Moreover, Northern's interpretation of section (c) to apply to all gas which migrates horizontally *within* a stratum, regardless of how far it migrates, is inconsistent with the language of the statute itself. The statute applies to natural gas that has "migrated to . . . a stratum or a portion thereof." K.S.A. 55-1210(c). As the producers point out, gas migrates horizontally within a stratum but migrates vertically "to" another stratum. See Webster's Third New International Dictionary 2257 (2002) (geological definition of the term "stratum" is "a tabular mass or thin sheet of sedimentary rock or earth of one kind formed by natural causes and made up [usually] of a series of layers lying between beds of other kinds"). Thus, Northern's argument alters the plain meaning of the statute by essentially requiring that we substitute the word "within" for the word "to" in the statute. See *Stewart Title of the Midwest v. Reece & Nichols Realtors*, 294 Kan. 553, 564-65, 276 P.3d 188 (2012) (recognizing that when a statute is plain and unambiguous, we do not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it).

Northern's argument also is inconsistent when considered in the context of other provisions of the Storage Act and overlooks the

maxim that various provisions of an act must be read together and harmonized if possible. See *Southwestern Bell Tel. Co.*, 289 Kan. at 1270-71.

The Storage Act contemplates that an injector will store gas within a specific stratum after obtaining storage rights in that stratum. A review of the Storage Act's provisions reveals that the legislature did not intend for an injector to claim ownership to gas which travels outside certificated boundaries, whether horizontally within the stratum or vertically to another stratum. See, *e.g.*, K.S.A. 55-1203 (permitting a natural gas public utility to "appropriate for its use for the underground storage of natural gas any subsurface stratum or formation in any land which the [KCC] shall have found to be suitable and in the public interest for the underground storage of natural gas"); K.S.A. 55-1204(a)(1) (providing a natural gas public utility desiring to exercise the right of eminent domain must obtain a certificate from the KCC setting out, *inter alia*, "[t]hat the underground stratum or formation sought to be acquired is suitable for the underground storage of natural gas"); K.S.A. 55-1209 (requiring the owner of an underground natural gas storage facility to provide the KCC with "a plat map identifying the location of such facility and a description of the geological formation or formations to be used for storage").

It is clear from the record that Northern is authorized to store gas within two particular strata—the Simpson formation and the Viola formation. Further, Northern's authorization to store gas within those formations does not extend to all portions of the formations wherever they may lie. Instead, as demonstrated by Northern's repeated requests for FERC authorization to expand the certificated boundaries of the Field, Northern is authorized to store its gas only in those portions of the formations that lie underneath the certificated boundaries of the Field.

Finally, Northern's interpretation of K.S.A. 55-1210(c) ignores the caselaw which precipitated the statute as a whole. As discussed, prior to K.S.A. 55-1210's enactment, this court applied the rule of capture to determine ownership rights in previously injected storage gas in two cases, both of which involved disputes between landowners on *adjoining properties* and both of which resulted in

the injector losing title to the storage gas. See *Union Gas System, Inc. v. Carnahan*, 245 Kan. 80, 86-88, 774 P.2d 962 (1989); *Anderson v. Beech Aircraft Corp.*, 237 Kan. 336, 347-48, 699 P.2d 1023 (1985). We generally presume that the legislature acts with full knowledge of existing law. *State v. Henning*, 289 Kan. 136, 144-45, 209 P.3d 711 (2009).

In response to this caselaw, the legislature enacted K.S.A. 55-1210 to establish that an injector can retain title to storage gas injected into underground storage facilities if gas migrates to "adjoining property or to a stratum, or portion thereof, which has not been condemned" and the injector can prove the gas migrated from its storage facility. K.S.A. 55-1210(c). The legislature further provided injectors with the means to test production wells on adjoining property, through injunction if necessary, in order to develop the proof necessary to retain title to gas that migrated outside the certified boundary but within the limitations of the introductory language of K.S.A. 55-1210(c)(1) and (2).

Thus, in light of the narrow circumstances which precipitated the statute's enactment and the language crafted by the legislature to address those circumstances, we simply cannot accept Northern's expansive interpretation of K.S.A. 55-1210(c). Instead, we agree with the district court that section (c) preserved the rule of capture as to injected gas which migrates horizontally within a stratum and beyond adjoining property or vertically to another stratum in which the injector has not obtained storage rights.

*Northern had no ownership rights in the migrating storage gas under general principles of personal property law.*

Although not addressed by the district court, Northern argued below and reasserts on appeal that even if this court agrees with the district court's interpretation of K.S.A. 55-1210, the district court nevertheless erred in granting summary judgment. Northern claims it has common-law ownership rights in the storage gas that migrated beyond adjoining property and that those rights are independent of K.S.A. 55-1210.

Specifically, Northern contends the district court failed to recognize that Northern never "abandoned" its rights to the migrating

storage gas and, consequently, Northern retained those rights. Northern cites *Botkin v. Kickapoo, Inc.*, 211 Kan. 107, 108-10, 505 P.2d 749 (1973), in support of this argument. But the issue in that case—whether the plaintiffs abandoned their ownership in feed mill equipment—has no bearing on the facts in this case which require us to determine the effect of K.S.A. 55-1210 on the application of the rule of capture to migrating gas.

While we have held that once natural gas is severed from real estate it becomes personal property, see *Northern Natural Gas Co. v. Martin, Pringle, et al.*, 289 Kan. 777, 788, 217 P.3d 966 (2009), Northern's argument ignores the entire body of caselaw that has applied the rule of capture to extinguish ownership rights in previously injected storage gas that has migrated to adjoining property. This body of caselaw developed without regard to whether the injector intended to "abandon" migrating gas. See *Martin, Pringle*, 289 Kan. at 791-92; *Union Gas*, 245 Kan. at 86-87; *Anderson*, 237 Kan. at 347-48.

Therefore, we conclude the district court did not err in failing to consider Northern's argument regarding whether it intended to abandon its migrating gas before granting summary judgment.

*No genuine issues of material fact precluded summary judgment.*

Finally, Northern contends the district court erred in granting summary judgment because genuine issues of material fact precluded summary judgment. Specifically, Northern cites factual disputes regarding whether Nash and L.D. caused Northern's storage gas to migrate away from the Field.

We have held that an issue of fact is not genuine unless it has legal controlling force as to the controlling issue. A disputed question of fact which is immaterial to the issue does not preclude summary judgment. Stated another way, if the disputed fact, however resolved, could not affect the judgment, it does not present a genuine issue of material fact. *Mitchell v. City of Wichita*, 270 Kan. 56, 59, 12 P.3d 402 (2000).

Here, as discussed above, the facts pertaining to Northern's allegation that Nash and L.D. caused Northern's storage gas to migrate beyond its certificated boundaries lacked any legal controlling

force over the controlling issue, *i.e.*, whether Northern retained title under K.S.A. 55-1210(c) to gas which migrated beyond its certificated boundaries. Thus, the district court did not err in finding there were no genuine issues of material facts precluding summary judgment.

*The district court did not abuse its discretion by refusing to permit additional discovery.*

Northern also asserts the district court abused its discretion in refusing to permit Northern to conduct further discovery. Northern contends it lacked the "opportunity to engage in any discovery or develop the factual record necessary to fully support its allegation that Producers are creating pressure sinks which draw Northern's storage gas away from the Cunningham Storage Field and to Producers' wells."

Ordinarily, summary judgment should not be granted until discovery is complete. However, if the facts pertinent to the material issues are not controverted, summary judgment may be appropriate even when discovery is unfinished. *Hauptman v. WMC, Inc.*, 43 Kan. App. 2d 276, 297, 224 P.3d 1175 (2010).

A district court's refusal to permit additional discovery under K.S.A. 60-256(f) is reviewed for an abuse of discretion. *Troutman v. Curtis*, 286 Kan. 452, 458-59, 185 P.3d 930 (2008). A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012). The party asserting an abuse of discretion bears the burden of showing such an abuse of discretion. *Harsch v. Miller*, 288 Kan. 280, 293, 200 P.3d 467 (2009).

As discussed, the facts material to the district court's ruling were undisputed. In denying Northern's request for additional discovery, the district court pointed out that Northern sought further discovery on allegedly disputed facts that were immaterial to the "key issue" before the court, *i.e.*, who held title to migrating storage gas. Additionally, the court noted it was "concerned" that Northern had asserted in parallel federal litigation "that the 'adjoining prop-

erty' issue presented 'a purely legal issue as to which no discovery was required.' " See *Northern Natural Gas Co. v. L.D. Drilling, Inc.*, No. 08-1405-WEB, Memorandum and Order (Doc. No. 288), at 24-25 (D. Kan. Mar. 26, 2010) (noting that "[b]oth parties have previously advised the Court . . . that this issue of statutory interpretation is a purely legal issue as to which no discovery is necessary"). Under these circumstances, we conclude the district court did not abuse its discretion in denying Northern's request for additional discovery.

*Conclusion*

To summarize, we interpret K.S.A. 55-1210(a) and (b) to govern ownership rights to previously injected storage gas that remains within a designated underground storage area, while K.S.A. 55-1210(c) governs ownership of migrating gas. Section (c) permits an injector to maintain title to gas which migrates horizontally to adjoining property or vertically to another stratum if the injector can prove by a preponderance of the evidence under subsections (c)(1) and (2) that the migrating gas originally was injected into the injector's underground storage area. However, section (c) preserves the rule of capture as to injected gas which migrates horizontally beyond property adjoining the certificated boundaries of a storage field.

Therefore, the district court properly concluded that to the extent Northern's injected storage gas migrated beyond property adjoining the certificated boundaries of its storage field, as those boundaries existed before June 2, 2010, Northern lost title to such gas. Consequently, Nash and L.D. had title to any such migrating gas produced by their wells until June 2, 2010, when FERC extended the certificated boundaries of the Field to include Nash's and L.D.'s wells, or brought those wells onto property adjoining the expansion area.

In conclusion, the district court properly granted summary judgment to Nash and L.D. and dismissed ONEOK's and Lumen's indemnification claims against Nash and L.D. as to any alleged acts of conversion occurring before June 2, 2010.

## THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION
### BY DENYING NORTHERN'S MOTION TO MODIFY THE
### SUMMARY JUDGMENT RULING

Although its argument is not entirely clear, Northern appears to also contend the district court erred by failing to recognize that FERC's June 2, 2010, order fundamentally altered the district court's factual findings regarding the location of the wells in question. Northern raised these same arguments below in a K.S.A. 2010 Supp. 60-260(b) motion which sought relief based upon the FERC Order. To the extent Northern challenges the district court's denial of the K.S.A. 2010 Supp. 60-260(b) motion, we reject that challenge.

We review the denial of a motion seeking relief from judgment under an abuse of discretion standard. *Subway Restaurants, Inc. v. Kessler*, 273 Kan. 969, 977, 46 P.3d 1113 (2002). See *Ward*, 292 Kan. at 550 (explaining abuse of discretion standard). As noted above, the party asserting an abuse of discretion bears the burden of showing such an abuse of discretion. See *Harsch*, 288 Kan. at 293.

In its summary judgment ruling of April 15, 2010, the district court concluded Nash's and L.D.'s wells were not on property adjoining the Field. Thus, under K.S.A. 55-1210(c), Northern lost ownership to gas migrating to those wells and the gas was subject to the rule of capture. On June 2, 2010, after Northern had already docketed its appeal from the summary judgment ruling, FERC authorized Northern to expand the Field. The parties appear to agree that as a result of the FERC Order, all but two of the wells at issue in this case are now located either within the expansion area or within 1 mile of the expansion area. Northern then filed a motion for relief from judgment, citing the FERC Order and challenging the district court's factual findings regarding the location of the wells.

For several reasons, the district court did not abuse its discretion in denying Northern's K.S.A. 2010 Supp. 60-260(b) motion. First, because Northern had already docketed its appeal, the district court lacked jurisdiction to modify the Order. See *Harsch*, 288

Kan. at 286-87 (noting that trial court lacks jurisdiction to modify a judgment after it has been appealed and the appeal is docketed at the appellate level).

Second, despite its lack of jurisdiction to modify the Order, the court conducted a hearing to address, *inter alia*, Northern's K.S.A. 2010 Supp. 60-260(b) motion. At that hearing, Northern asked the district court to certify its summary judgment ruling as a final judgment only as to its conversion claims as they existed before the FERC Order modified the Field's certificated boundaries. At the hearing, counsel for Northern specifically stated, "we can stick a stake in the ground on June 2nd and everything that we discussed in the prior Summary Judgment order can go up to the Court of Appeals. Nothing will change those facts looking backwards." Although the court declined to modify the Order with respect to "matters prior to June 2nd," it acknowledged that "[t]he issue from June 2nd forward . . . is a much different animal."

But as L.D. and Nash point out, the undisputed material facts as they existed at the time of the district court's summary judgment ruling were not altered by the FERC Order. Further, the district court's acknowledgement regarding the changed circumstances after June 2, 2010, signals the district court's intent to limit its summary judgment ruling to matters before June 2, 2010. As previously discussed, we are affirming that temporally limited summary judgment ruling but remanding the case to the district court to resolve any remaining claims that might be based on matters "from June 2nd forward."

Under these circumstances, we conclude the district court did not abuse its discretion in denying Northern's K.S.A. 2010 Supp. 60-260(b) motion.

## THE SUMMARY JUDGMENT RULING DID NOT RESULT IN AN UNCONSTITUTIONAL TAKING OF NORTHERN'S PROPERTY WITHOUT JUST COMPENSATION

Next, Northern argues the district court's summary judgment ruling "constitute[d] an unconstitutional judicial taking of Northern's property because the District Court's decision judicially eliminate[d] Northern's established property interest in its injected

storage gas within the Cunningham Storage Field under (1) Kansas common law; (2) the express terms of [K.S.A. 55-1210]; and (3) this Court's decision in [*Union Gas*]."

Preliminarily, Nash, L.D., and ONEOK contend Northern failed to preserve this issue for appeal. Alternatively, they argue this issue lacks merit.

Northern argued below that it had vested rights in the migrating storage gas under general principles of personal property law and that there was no evidence Northern intended to abandon its storage gas. Specifically, Northern asserted, "Northern has a vested property interest in its injected storage gas and this Court cannot now interpret the Storage Statute the way advocated by Producers without unconstitutionally depriving Northern of its property without just compensation." Even if we deem this assertion sufficient to preserve Northern's "judicial taking" argument, Northern's argument fails.

First, in support of its argument that the district court's summary judgment ruling violated the Takings Clause of the Fifth Amendment to the United States Constitution, Northern relies upon a plurality opinion with no precedential value. See *Stop the Beach Renourishment, Inc. v. Florida Dept. of Environmental Protection*, 560 U.S. 702, 715, 130 S. Ct. 2592, 177 L. Ed. 2d 184 (2010) (plurality) (four justices agreed that a state court order could constitute a "judicial taking" if the "court declares that what was once an established right of private property no longer exists"); see also *Gibson v. American Cyanamid Co.*, No. 07-C-864, 2010 WL 3062145, at *3 (E.D. Wis. 2010) (recognizing "[t]he plurality in *Stop the Beach* held that the Takings Clause applies to the judiciary"); *Sagarin v. City of Bloomington*, 932 N.E.2d 739, 744 (Ind. App. 2010) (acknowledging that plurality portions of *Stop the Beach* cited by parties in the case lacked precedential authority).

Second, even if we were persuaded by the plurality opinion in *Stop the Beach*, the Takings Clause has no application here because the district court's ruling did not result in the taking of private property for public use. See *Young Partners v. U.S.D. No. 214*, 284 Kan. 397, 406, 160 P.3d 830 (2007) ("The Fifth Amendment, made applicable to the States through the Fourteenth Amendment, pro-

vides that 'private property [shall not] be taken for public use, without just compensation.' "). Instead, the court's ruling resolved a dispute between private individuals regarding ownership rights in previously injected storage gas through application of K.S.A. 55-1210 and the common-law rule of capture. For these reasons, we conclude the district court's summary judgment ruling did not result in an unconstitutional taking of Northern's property without just compensation.

### THE SUMMARY JUDGMENT RULING NEITHER CONFLICTS WITH NOR IS PREEMPTED BY THE NATURAL GAS ACT, 15 U.S.C. § 717 *et seq.*

Finally, Northern argues the district court's summary judgment ruling conflicts with, and therefore is preempted by, the Natural Gas Act, 15 U.S.C. § 717 *et seq.* (2006) (the NGA) because FERC has exclusive jurisdiction over the abandonment of natural gas and the withdrawal of natural gas from interstate commerce. We exercise de novo review over questions of federal preemption. *Zimmerman v. Board of Wabaunsee County Comm'rs*, 289 Kan. 926, 974-75, 218 P.3d 400 (2009).

In *Zimmerman,* we discussed the circumstances in which the federal law preempts state law:

" 'Absent an express statement by Congress that state law is preempted [, federal] preemption occurs where [1] there is an actual conflict between federal and state law; [2] where compliance with both federal and state law is, in effect, physically impossible; [3] where Congress has occupied the entire field of regulation and leaves no room for states to supplement federal law; or [4] when the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.' " 289 Kan. at 974-75 (quoting *Doty v. Frontier Communications, Inc.*, 272 Kan. 880, Syl. ¶ 4, 36 P.3d 250 [2001]).

Northern fails to fully explain how the district court's summary judgment ruling meets any of the above-described circumstances. Instead, Northern argues the NGA preempts the district court's ruling because: (1) the district court impliedly held that Northern abandoned its storage gas, and FERC has exclusive jurisdiction over the abandonment of natural gas under 15 U.S.C. § 717f(b) (2006); and (2) the district court's rejection of Northern's "Inter-

ference Conversion Claim" effectively allows the withdrawal of natural gas from interstate commerce, an issue over which FERC has exclusive jurisdiction as stated in *Sunray Oil Co. v. F. P. C.*, 364 U.S. 137, 156, 80 S. Ct. 1392, 4 L. Ed. 2d 1623 (1960). These arguments fail for several reasons.

First, the district court made no finding regarding abandonment, implied or otherwise, in its comprehensive summary judgment ruling. Second, even if the district court had made such a finding, Northern's reliance on 15 U.S.C. § 717f(b) is misplaced because that section governs abandonment of facilities and services, not the abandonment of title to or ownership rights in migrating storage gas. See 15 U.S.C. § 717f(b) (requiring natural gas companies to obtain FERC's permission and approval before abandoning "all or any portion of its facilities subject to the jurisdiction of the Commission, or any service rendered by means of such facilities").

Finally, none of the cases cited by Northern support its suggestion that the district court's summary judgment ruling resulted in the withdrawal of Northern's storage gas from interstate commerce in violation of the NGA. See *Sunray Oil Co.*, 364 U.S. at 156 (explaining that an independent natural gas producer who obtains a certificate of public convenience and necessity under the NGA and agrees to place its gas in interstate commerce must obtain FERC's approval in order to withdraw that gas supply from interstate commerce); *Public Service Com'n v. Federal Energy Reg.*, 610 F.2d 439, 443 (6th Cir. 1979) (concluding state law seeking to regulate transportation of natural gas through interstate pipelines and to reserve a supply of that natural gas to certain state residents was preempted by NGA); *Backus v. Panhandle Eastern Pipe Line Co.*, 558 F.2d 1373, 1376 (10th Cir. 1977) (invalidating state law requiring interstate gas pipeline owner to provide service upon request to rural landowners if the pipeline crosses the landowners' property and to provide gas to the landowners at same rate as charged in nearest city or town). See also *Atlantic Rfg. Co. v. Pub. Serv. Comm'n*, 360 U.S. 378, 389, 79 S. Ct. 1246, 3 L. Ed. 2d 1312 (1959) (discussing FERC's authority under 15 U.S.C. § 717f(e) to grant a certificate of public convenience and necessity "authorizing the whole or any part of the operation, sale, service, construction,

extension, or acquisition" of natural gas facilities). Accordingly, we reject Northern's federal preemption arguments.

CONCLUSION

In sum, we affirm the district court's summary judgment ruling as well as its decision denying Northern's K.S.A. 2010 Supp. 60-260(b) motion. Because the district court effectively limited the scope of its summary judgment ruling to matters before June 2, 2010, we remand the case for any further proceedings necessary to resolve any remaining claims that may exist regarding matters after June 2, 2010, and for resolution of the district court's standing order requiring ONEOK and Lumen to suspend payments to Nash and L.D.

Affirmed in part and remanded with directions.

BEIER, J., not participating.

THOMAS E. FOSTER, District Judge, assigned.