NOT DESIGNATED FOR PUBLICATION

No. 112,829

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of A.D. DOB XX/XX/2012 a Female.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; DANIEL CAHILL, judge. Opinion filed September 4, 2015. Affirmed.

*Michael J. Nichols*, of Michael J. Nichols, P.A., of Kansas City, for appellant.

*Ashley Hutton*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MCANANY, P.J., GARDNER, J., and WALKER, S.J.

*Per Curiam*: This appeal comes before the court on Father's appeal from the termination of his parental rights. We hold the district court's decision finding Father unfit is supported by clear and convincing evidence, and the court did not abuse its discretion by terminating his parental rights.

Because this case questions the sufficiency of the evidence, we set forth the underlying facts in detail.

Father had been in prison for aggravated assault and was on parole when he had a car accident. Thereafter, he violated his parole by failing to report and was incarcerated. Father alleged he had been unable to check in with his parole officer because he was

1

recovering from the accident. Father was released on June 27, 2013, and lived with his sister.

Father told the social worker he and A.D., his minor daughter, would continue to reside with his sister until he was able to obtain his own stable housing. Father intended to get full custody of A.D. and assured the social worker he was going to care for her. He and his sister agreed to be accountable for A.D.'s safety, and both signed a safety plan regarding her safety. Shortly thereafter, Father was arrested for possession of a gun and methamphetamine. Father has remained incarcerated since his arrest on July 12, 2013.

The Department of Children and Families (DCF) requested custody of A.D. and an ex parte order was issued placing her in protective custody. The natural mother stipulated, and the district court found, A.D. was a child in need of care. Case plan tasks were implemented with the goal of reintegration, but Father failed to participate in those tasks. It was also reported Father "appears to have been out of custody from 08/16/2013 until 12/13/13. KVC and the CSO have had no contact with [Father.]" Because Father failed to participate in the parenting case plan, KVC [Behavioral HealthCare] recommended terminating his parental rights.

At the termination hearing, Father was the only witness called by the State. Father testified he was currently residing in a federal facility because he had been convicted of felony possession of a firearm and had approximately 1 1/2 years remaining on his sentence. Father stated he had no income at the time, he had not participated in any parenting classes, and he had not completed a RADAC assessment. He stated since the beginning of A.D.'s case, he had been released from custody for about 1 to 2 months, but he admitted he never saw A.D. when he was released. During his release, he said he was working with someone to get him back into school so he could get into a carpentry training program, but he was subsequently arrested. Father also said he attempted to contact the court services officer but was unable to reach her. He kept in contact with a

2

KVC worker while he was incarcerated but he failed to contact her when he was released from custody. Father admitted the reason he failed to reach those he called was because he called them late in the day.

After admitting he had not visited A.D., Father was asked if he had worked at all toward his court orders. Father testified he was working with someone who was going to help him with his legal matters, which included assistance with warrants and traffic violations, and matters involving his children. Father explained it was difficult to complete his case plan tasks because those opportunities were not provided in prison. Father stated his belief that he could complete the tasks once he was released from custody.

After hearing Father's testimony and reviewing the record, the district court found by clear and convincing evidence Father was unfit to care properly for A.D. The district court found the conditions of unfitness on the part of Father were unlikely to change in the foreseeable future and concluded it was in the best interests of A.D. to terminate Father's parental rights. We examine each of these findings below.

Father argues the district court's decision to terminate his parental rights was not supported by sufficient evidence. He contends he was ordered to complete case plan tasks which were not tailored to his particular situation and he was not given adequate time to comply. He claims his parental rights were terminated based solely on his incarceration because the district court's orders did not provide him any opportunity to contact or maintain a reasonable relationship with his children.

When reviewing the district court's decision to terminate parental rights, we "consider whether, after review of all the evidence, viewed in the light most favorable to the State, [we are] convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence," that the parent's rights should be

3

terminated. *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008). In making this determination, we do not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. 286 Kan. at 705.

If a child is adjudicated a child in need of care, parental rights may be terminated "when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2014 Supp. 38-2269(a). The Revised Kansas Code for Care of Children, K.S.A. 38-2201 *et seq.*, lists a number of nonexclusive factors the district court must consider in determining a parent's unfitness. See K.S.A. 2014 Supp. 38-2269(b) and (c). Any one of the factors may, but does not necessarily, establish grounds for terminating a parent's rights. See K.S.A. 2014 Supp. 38-2269(f). The district court is not limited to the statutory factors in making a determination of unfitness. See K.S.A. 2014 Supp. 38-2269(b).

In the present case, the district court found Father unfit based on the following statutory factors:

- Father physically, mentally, and emotionally neglected A.D., satisfying K.S.A. 2014 Supp. 38-2269(b)(4);

- Father had been convicted of a felony and was serving a term of imprisonment, satisfying K.S.A. 2014 Supp. 38-2269(b)(5);

- Reasonable efforts by appropriate public or private child caring agencies had been unable to rehabilitate the family, satisfying K.S.A. 2014 Supp. 38-2269(b)(7);

4

- Father "demonstrated an utter lack of effort on [his] part to adjust [his] circumstances, conduct, or conditions to meet the needs of the child," satisfying K.S.A. 2014 Supp. 38-2269(b)(8);

- Father failed to maintain regular visitation, contact, or communication with A.D., or with the custodian of A.D., satisfying K.S.A. 2014 Supp. 38-2269(c)(2); and

- Father failed to carry out a reasonable plan, approved by the district court, which was directed toward the integration of A.D. into the parental home, satisfying K.S.A. 2014 Supp. 38-2269(c)(3).

We first examine whether the district court's findings of unfitness were supported by clear and convincing evidence. The district court heard evidence regarding Father's incarceration, his failure to visit A.D. while he was released from custody, his failure to participate in any parenting classes, and his overall failure to complete any of the case plan tasks. The district court heard testimony Father would be incarcerated for at least another 1 1/2 years.

The district court also heard Father's testimony that he was unable to contact any social workers; however, he had tried to contact them only during the evenings. He also testified the opportunities to complete case plan tasks were not available to him while he was in prison, explained that 1 to 2 months was not enough time to work the plan, and forecasted that once he was released he would be able to complete the goals.

The district court found "incarceration wasn't something that just happened to [Father]. It's something that he . . . brought upon himself." The district court noted that A.D., then 2 1/2 years old, had had no contact with Father during the last 1 1/2 years because of his incarceration. The district court pointed out that Father could have visited the child during his release, he could have obeyed the conditions of his probation and/or

5

parole, and he could have refrained from participating in additional felonious activities. The district court further noted that Father, by his own admission, had failed to work on his parenting case during his release from custody. Based on these facts, we find clear and convincing evidence supporting the district court's determination that Father is unfit to care properly for A.D.

We next determine whether clear and convincing evidence supported the district court's determination that Father's behavior was unlikely to change in the foreseeable future. See K.S.A. 2014 Supp. 38-2269(a). We measure the "foreseeable future" from the child's perspective and take into account a child's perception of time. *In re S.D.*, 41 Kan. App. 2d 780, 790, 204 P.3d 1182 (2009). A district court may predict a parent's future unfitness based on his or her history. *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982).

The district court issued Father clear orders, but he failed to comply with any of the tasks. The district court was aware that at the age of 2 1/2, A.D. had had no contact with her Father for at least the last 1 1/2 years of her life due to his incarceration. The district court was aware of Father's criminal history, as summarized in the DCF report included in the child in need of care petition. Father testified he had been released from custody only for 1 or 2 months before being rearrested and that he had not attempted to visit A.D. during his release. Father had approximately 1 1/2 years of his sentence remaining. We find clear and convincing evidence supporting the district court's determination that Father's behavior is unlikely to change in the foreseeable future.

Lastly, we consider whether the district court correctly found that terminating Father's parental rights was in A.D.'s best interests. See K.S.A. 2014 Supp. 38-2269(g)(1).

Because the district court hears the evidence directly, it is in the best position to determine the best interests of the child, and an appellate court cannot overturn that decision without finding an abuse of discretion. *In re K.P.*, 44 Kan. App. 2d 316, 322, 235 P.3d 1255, *rev. denied* October 7, 2010. An abuse of discretion occurs when the district court acts in an unreasonable, fanciful, or arbitrary manner, or when the court bases its decision on an error of fact or an error of law. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013).

The district court found Father was not likely to change his conduct or condition in the future. Father spent a significant amount of time in prison, and even when he was briefly released, he failed to visit his daughter. Father "brought [incarceration] upon himself," failed to obey the conditions of his parole, and failed to refrain from further felonious actions. The district court found reintegration with Father was no longer a viable alternative, and it was in the best interests of A.D. to terminate Father's parental rights. We find no abuse of discretion in that ruling.

Affirmed.