NOT DESIGNATED FOR PUBLICATION

No. 114,810

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of A.F., DOB XX/XX/2007.

MEMORANDUM OPINION

Appeal from Saline District Court; PAUL J. HICKMAN, judge. Opinion filed July 1, 2016. Affirmed.

*Leslie Ann Johnson*, of Leslie Ann Johnson Law Office, LLC, of Salina, for appellant.

*Ellen Mitchell*, county attorney, and *Nathan L. Dickey*, assistant county attorney, for appellee.

Before MALONE, C.J., GREEN and GARDNER, JJ.

*Per Curiam*: T.A. (Mother) the natural mother of A.F., born in 2007, appeals from the district court's termination of her parental rights, arguing that insufficient evidence supports termination. Finding that clear and convincing evidence supports the district court's determination, we affirm.

*Procedural background*

The Barber County District Court adjudicated A.F. a child in need of care on July 2, 2012, and he was removed from the home. Though he remained in the custody of the Department of Children and Families (DCF), A.F. was reintegrated into the home on August 29, 2013. The case was transferred to Saline County on December 31, 2014. On

April 23, 2015, A.F. was again removed from the home. Approximately 1 month later, the State moved to terminate Mother's parental rights.

At the termination hearing, the State presented numerous witnesses. Jennifer Johnston, a case manager with St. Francis Community Services (St. Francis), testified that A.F. was adjudicated a child in need of care due to concerns about the cleanliness of the house and allegations of sexual abuse. She stated there was trash on the porch, dirty dishes in the living room, and blankets in lieu of doors in doorways. At the time of A.F.'s removal, the home was not clean and safe for children. After A.F.'s removal, the home met minimal standards of cleanliness, and was sometimes very clean. Mother was able to maintain minimal standards of cleanliness after moving to Salina. Johnston also testified that Mother inappropriately discussed the case with A.F. and did not utilize skills taught in parenting classes.

Ashley Farley, a reintegration social worker at St. Francis who worked with the family until they moved to Salina, testified that Mother's house was very cluttered and smelled heavily of smoke. In at least two instances, trash piles had been swept against a wall and were still there during her next visit. Farley testified that A.F. did not arrive at school fed and well nourished. She also stated that a doctor had requested A.F. take melatonin to help him sleep, but Mother claimed she was unable to afford the medication. However, Mother still had internet access, a subscription to Netflix, and was able to purchase cigarettes for herself.

Alan Opat, the counselor at A.F.'s school, testified that A.F. had bitten mother and she had bitten him back. Mother did not break A.F.'s skin, but it was red. Opat also stated that A.F. sometimes missed the school-provided breakfast because he arrived late for classes. Katie Adamson, a former St. Francis employee, testified that Mother's house in Salina was a little cluttered but was generally decently kept. She also stated that Mother

2

made multiple requests for more frequent home visits because Mother would not keep the house clean otherwise.

Tiffany Boeken, Mother's last case manager with St. Francis, testified that Mother made only minimal progress on her case plans, did not successfully complete any of the tasks assigned to her, and had not shown any improvement in her parenting skills. Boeken testified that Mother struggles with depression and anxiety and Mother indicated her anxiety affected her ability to parent A.F. In regard to the cleanliness of the home, Boeken stated that sometimes the home was clean and sanitary but other times it was not.

After the State rested, Mother called Amber Giauque-Taggart as a witness. Giaque-Taggart testified that Mother does not have any more difficulties parenting A.F. when in a depressive state than she does when not depressed.

Mother also took the stand. She testified that she received food stamps and was babysitting for friends for extra money. She stated she suffered from depression and anxiety but goes to therapy once a week and has taken three of four parenting classes. Mother admitted she had bitten A.F., but said she did so not out of anger but to get A.F.'s attention.

At the conclusion of the evidence, the district court found Mother unfit and terminated her parental rights. The district court also found that Mother had not rebutted the presumption of unfitness found in K.S.A. 2015 Supp. 38-2271.

*Sufficiency of the evidence*

The Revised Kansas Code for Care of Children provides that the court may terminate parental rights when a child has been adjudicated a child in need of care and "finds by clear and convincing evidence that the parent is unfit by reason of conduct or

3

condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2015 Supp. 38-2269(a). In reviewing for clear and convincing evidence, an appellate court considers whether, "after review of all the evidence, viewed in the light most favorable to the State, it is convinced that a rational factfinder could have found it highly probable" that the parent's rights should be terminated. *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008).

We first address the presumption of unfitness found in K.S.A. 2015 Supp. 38-2271. That law states, in relevant part:

> "(a) It is presumed in the matter provided in K.S.A. 60-414, and amendments thereto, that a parent is unfit by reason of conduct or condition which renders the parent unable to fully care for a child, if the [S]tate establishes, by clear and convincing evidence, that:
>
> . . . .
>
>  (5) the child has been in an out-of-home placement, under court order for a cumulative total period of one year or longer and the parent has substantially neglected or willfully refused to carry out a reasonable plan, approved by the court, directed toward reintegration of the child into the parental home;
>
> . . . .
>
> "(b) The burden of proof is on the parent to rebut the presumption of unfitness by a preponderance of the evidence.  In the absence of proof that the parent is presently fit and able to care for the child or that the parent will be fit and able to care for the child in the foreseeable future, the court shall terminate parental rights in proceedings pursuant to K.S.A. 2015 Supp. 38-2266 et seq., and amendments thereto."

The district court found this presumption applied and that Mother had not rebutted the presumption. A.F. had been in out-of-home placement for approximately 19 of the 40 months he was in DCF's legal custody. Adamson testified that Mother was willing to listen to suggestions but would not follow through. Likewise, Boeken testified that Mother only made minimal progress on her case plans over a 3-year period and had not

4

completed any of the case plan tasks assigned to her. Viewing the evidence in the light most favorable to the State, we believe a rational factfinder could have found it highly probable that Mother's parental rights should be terminated.

The district court did not rely solely on the presumption here, however. It also relied on various factors set forth in K.S.A. 2015 Supp. 38-2269(b), which lists nonexclusive factors the court shall consider in making a determination of unfitness. The court considers a separate list of nonexclusive factors when a child is not in the physical custody of the parent. K.S.A. 2015 Supp. 38-2269(c). Any one of the factors in either of these subsections may establish grounds for termination of parental rights. K.S.A. 2015 Supp. 38-2269(f).

The district court stated it found Mother unfit for the following statutory reasons:

"(1) Emotional illness, mental illness, mental deficiency or physical disability of the parent, of such duration or nature as to render the parent unable to care for the ongoing physical, mental and emotional needs of the child;

"(2) conduct toward a child of a physically, emotionally or sexually cruel or abusive nature;

. . . .

"(4) physical, mental or emotional abuse or neglect or sexual abuse of a child;

. . . .

"(6) unexplained injury or death of another child or stepchild of the parent or any child in the care of the parent at the time of injury or death;

"(7) failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family;

"(8) lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child; and

"(9) whether the child has been in extended out of home placement as a result of actions or inactions attributable to the parent and one or more of the factors listed in subsection (c) apply.

5

. . . .

"(c)(3) failure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home." K.S.A. 38-2269(b)(1-9), (c)(3).

Many of the State's witnesses testified Mother could not keep her home clean without scheduled home visits. The district court found that keeping a clean and appropriate home is part of providing for a child's physical, mental, and emotional needs, and due to Mother's depression, she had failed to provide for these needs. In addition, Farley testified Mother was unable to purchase melatonin—a very inexpensive medication—for A.F., but was able to continue purchasing cigarettes and pay for a Netflix subscription. The district court found this showed a lack of effort to adjust her circumstances or conduct to meet A.F.'s needs. Similarly, the district court found Mother engaged in physically abusive conduct toward A.F. when she bit him and left a mark during one of his outbursts. Although the facts are not as egregious as in some cases, when they are viewed in the light most favorable to the State, a rational factfinder could find it highly probable that Mother's parental rights should be terminated.

Upon making a finding of unfitness of the parent, "the court shall consider whether termination of parental rights as requested in the petition or motion is in the best interests of the child." K.S.A. 2015 Supp. 38-2269(g)(1). In making such a determination, the court shall give primary consideration to the physical, mental, and emotional needs of the child. K.S.A. 2015 Supp. 38-2269(g)(1).

Because the district court is in the best position to make findings on the best interests of the child, we will not disturb its judgment in the absence of an abuse of discretion. *In re K.P.*, 44 Kan. App. 2d 316, 322, 235 P.3d 1255 (2010). "A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact."

6

*Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013).

Although the record reflects a significant bond between Mother and A.F., the district court did not abuse its discretion when it found termination of Mother's parental rights was in the best interests of the child. The district court found Mother was incapable of properly caring for A.F. now or in the foreseeable future. Even after 3 years of services, Mother needed frequent home visits in order to maintain a clean home, only showed minimal progress toward completing the objectives of her case plan, and showed little improvement in her parenting skills. We find the district court's conclusion that A.F.'s bests interests are served by terminating Mother's parental rights was not arbitrary, fanciful, or unreasonable.

Affirmed.