NOT DESIGNATED FOR PUBLICATION

No. 115,575

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of J.H.E.

MEMORANDUM OPINION

Appeal from Johnson District Court; KATHLEEN L. SLOAN, judge. Opinion filed December 9, 2016. Affirmed.

*Dennis J. Stanchik*, of Olathe, for appellant natural mother.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, for appellee.

Before HILL, P.J., PIERRON and GARDNER, JJ.

*Per Curiam*:  This is an appeal from the district court's order terminating the parental rights of C.H. (Mother), who is the biological mother of J.H.E., a minor child born in 2012. The district court found Mother was unfit, her unfitness was unlikely to change in the foreseeable future, and termination of parental rights was in J.H.E.'s best interests. Mother maintains the district court's findings were not supported by sufficient evidence. Finding no error, we affirm.

*Factual and procedural background*

In January 2014, the State filed a petition alleging J.H.E. was a child in need of care. In its petition the State alleged the following:

- In October 2013, Department for Children and Families (DCF) received a report that indicated D.E. (Father) shot a gun at Mother.

1

- In January 2014, DCF received a report indicating drug concerns in the home and the adults having guns. The report stated the children in the home had access to drugs and drug paraphernalia.
- On January 17, 2014, law enforcement assisted DCF with a home visit where drugs and drug paraphernalia were discovered while J.H.E. was present.

The district court then issued an ex parte order of protective custody. The district court found the home contained drugs, drug paraphernalia, and other dangerous articles. The district court also found the parents had a history of dangerous, illegal activity. The district court placed J.H.E. in protective custody and scheduled a temporary custody hearing.

On January 23, 2014, the district court entered its orders of temporary custody. The district court found that: appropriate private or public agencies had made reasonable efforts to prevent the child's removal from the home; the child was likely to sustain harm if not immediately removed from the home; remaining in the home would be contrary to the welfare of the child; and immediate placement was in the best interests of the child.

An adjudication hearing was held on July 25, 2014. Mother entered a no contest statement pursuant to K.S.A. 2015 Supp. 38-2202(d)(2), and the district court found that J.H.E. was a child in need of care as defined by K.S.A. 2015 Supp. 38-2202(d)(1)-(3). The district court proceeded directly to disposition, approving a 4-month reintegration period for Mother. A formal reintegration plan was not submitted to and approved by the district court until October 3, 2014. At the conclusion of this hearing, the district court also ordered Mother to submit to a drug screen. Mother tested positive for methamphetamine and the district court placed Mother in the adult detention center for lying to the court about her drug use.

On January 21, 2015, the district court conducted a permanency review hearing. The district court found that appropriate public or private agencies had made reasonable efforts to assist and support the family to achieve the dispositional goal of the case and the progress toward reintegration was adequate. The district court also extended the reintegration plan to April 27, 2015, the next scheduled hearing date.

On May 20, 2015, the State filed a motion for finding of unfitness and termination of parental rights. The termination hearing was held on November 16, 2015.

The first witness to testify at the hearing was Officer Kyle Clausius of the Olathe Police Department. Officer Clausius testified that on January 17, 2014, he reported to a residence in Olathe, Kansas. He was there to assist a social worker employed by DCF with the task of conducting a home visit. Inside the residence were two small children, two women, and Father. Mother was not present and did not reside at the residence at this time. Officer Clausius observed a marijuana cigarette on the kitchen floor in reach of both children; one of the women claimed it was hers. In Father's room, Officer Clausius discovered drug paraphernalia in plain view, including baggies containing residue, which was later found to be a chemical substance commonly used as a cutting agent for methamphetamine.

Officer Andy Falcon of the Olathe Police Department also testified. He testified that he was dispatched to the courthouse on June 9, 2015, with another officer to find Mother. When he contacted Mother, she reported she was on her way to see J.H.E. for a court-appointed visit. Mother and Father had driven to the courthouse together and the two began arguing on the way. Father was upset because he felt he was not seeing J.H.E. as often as was Mother. During the argument, Father grabbed the door panel on the driver's side, tore the inside of the panel off, and threw it in the backseat. Mother, the passenger, said Father was trying to shove her out of the car door. She was able to get out of the car when it stopped. Father left with Mother's car.

3

Officer Falcon then conducted a lethality assessment to determine whether there was a high risk of danger to Mother. Out of 17 questions, Mother answered yes to the following 7:

- Is he violent or constantly jealous or does he control most of your daily activities?
- Have you ever attempted to leave him and are you currently separated?
- Is he unemployed?
- Has he ever threatened to kill himself?
- Does he follow you, spy on you, leave threatening messages or notes on the answering machine or voicemail, or call you after you have told him to stop?
- Does he have a drug or alcohol problem?
- Has he ever destroyed your property?

Because Mother met the minimum level of answers, Officer Falcon provided Mother with the number for Safe Home. He also confirmed that Mother had previously filed a protection order against Father, but Father had not yet been served.

Rachel Doull, a permanency supervisor with KVC Behavioral Healthcare (KVC) also testified. She worked on J.H.E.'s case as a supervisor in August 2014 to December 15, 2014. Doull testified that J.H.E. came into physical custody on April 9, 2014. When asked about the initial concerns, Doull testified, "I know that there were drug concerns with the parents which was the reason for removal. The drug paraphernalia found in the home and drug concerns with both parents." Doull also met with Mother to discuss case plan tasks. Doull believed that at the beginning of the case, Mother lived with her mother. At some point, Mother moved back in with Father. The timing of the move was concerning because Mother was making more progress on her case than Father.

4

Mother did not miss a urinalysis (UA) test in August of 2014. She tested clean on September 8, 2014, but then tested positive for barbiturates on September 11, 2014. Mother explained that she had a prescription and would bring it in, but she never did. After moving in together, Mother and Father missed three UAs in September and one in October. Missing a test was a serious concern because KVC considered a missed UA as a positive UA. Doull suspected Mother and Father were using drugs together. Mother then tested clean on October 13, 16, 21, 27, and 29, 2014. She also tested clean on her three UAs in November and her two in December 2014.

Doull also testified that during the time she was involved in this case she received proof of Mother's employment and documentation that Mother had completed 4 out of 5 sessions of the Love and Logic class. Doull stated Mother failed to provide proof of transportation and documentation that she completed a psychological evaluation. The psychological evaluation, however, was not part of the reintegration plan; it was a case plan task. Mother was also required to attend therapy. She was assigned a KVC therapist, but was discharged due to a lack of contact and failure to attend scheduled meetings. Mother was also required to receive a RADAC assessment; Mother said she completed the assessment through DCF, but she failed to provide the documentation.

Doull further testified that Mother had 3 hours of unsupervised visitation per week immediately after J.H.E. went into the physical custody of DCF. These visits were subsequently pulled back to supervised status due to a concern that Mother might have been allowing Father to participate in the visits, which was not approved by KVC. These visits were initially supervised at the KVC office. By November 2014, the visits began taking place in the community and were altered to monitored status. Doull admitted that this modification of the visitation schedule would not have occurred if Mother had not been making progress or had not been maintaining consistent visits with J.H.E.

Doull stated that during her involvement in this case, Mother maintained regular contact with KVC and her child. Doull never had concerns regarding Mother's parenting skills or her bond with J.H.E. In mid-December 2014, Doull recommended extending Mother's plan because she was making progress.

The State also called Alyssa Hillman, a KVC permanency supervisor, to testify. Hillman worked on the case from December 15, 2015, to the date of the hearing. Hillman testified she was concerned about the domestic violence between Mother and Father. Mother contacted Hillman in February 2015 saying Father beat her up and threatened to kill her. After learning this, a meeting was held with Mother, Father, Hillman, the KVC case manager, the guardian ad litem, the CASA worker, and the parents' attorneys. Mother and Father were holding hands at the meeting, and when asked about their relationship, they said they needed to discuss it further. After the meeting, Hillman maintained her concerns about Mother's relationship with Father. Mother's visits were again scaled back in April 2015, due to another domestic violence altercation. Although Mother was attending visits regularly and submitting UAs regularly, Hillman did not believe Mother completed a significant portion of her reintegration plan. Hillman stated Mother's drug use at this time was not a concern, but there was a concern regarding Mother's ability to protect J.H.E.

The State also called Megan Adams, a therapeutic case manager at KVC, to testify. Adams testified that from the time she began working on this case to the time of the hearing, Mother missed 12 out of 25 visits with J.H.E., and all but 3 were cancelled due to Mother's failure to follow the drug testing protocol established by KVC.

Adams testified that Mother provided proof she was living with a cousin in Missouri. Mother also provided three paycheck stubs from two different restaurants. Mother also provided a budget, but the budget did not make sense because the expenses exceeded the income. Mother delivered proof that she completed a domestic violence

6

assessment, which contained no recommendations for additional services. Mother also completed a psychological evaluation. Adams testified that Mother maintained regular contact with her.

Adams testified that Mother was not making significant progress on her case plan tasks. Mother indicated she was not going to leave Father because she wanted to keep her family together. Adams said she had concerns about Mother's drug use, her failure to maintain stable employment, the insufficient income, the lack of a transportation plan, and missed visits with J.H.E. She also noted that 3-year-old J.H.E. had been in out-of-home placement for 19 months—over half of his life.

Mother also testified at the hearing. She said she had completed a RADAC assessment, which contained no recommendations for services or treatment. She also voluntarily scheduled an additional alcohol and drug evaluation following the first day of the hearing, but the earliest date for the evaluation was after the hearing's continuation.

Mother stated that in the last 18 months, the longest she had been unemployed was for 3 months. She also testified that she worked fulltime. Regarding the budgets, Mother explained that the paystubs would contain only hourly wage information, but would not reflect tips from customers. She further stated she was aware of social benefit programs from which she could seek assistance in the event that her income was insufficient. She also testified that her transportation plan involved assistance from family members and use of the bus line, which was near her residence.

After hearing the testimony and reviewing the record, the district court found by clear and convincing evidence that Mother was unfit to properly care for J.H.E. The district court found the conditions of unfitness on the part of Mother were unlikely to change in the foreseeable future. The district court concluded it was in the best interests of J.H.E. to terminate Mother's parental rights. Mother timely appeals.

On appeal, Mother contends the State failed to prove by clear and convincing evidence that she was unfit and unlikely to change in the foreseeable future. Mother further claims the district court failed to make specific findings of fact in support of its legal conclusions. In particular, Mother claims the district court's conclusion regarding the foreseeable future was not supported by specific findings of fact. Mother also argues the district court abused its discretion by concluding that termination of Mother's parental rights was in the best interests of J.H.E.

*Standard of review*

We first set forth our standard of review. If children are adjudicated children in need of care, parental rights may be terminated "when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2015 Supp. 38-2269(a). The Revised Kansas Code for Care of Children, K.S.A. 38-2201 *et seq.*, lists a number of nonexclusive factors the district court must consider in determining a parent's unfitness. See K.S.A. 2015 Supp. 38-2269(b) and (c). Any one of the factors may, but does not necessarily, establish grounds for terminating a parent's rights. K.S.A. 2015 Supp. 38-2269(f).

When reviewing a district court's findings on this point, our standard of review is clear:  The district court's findings must be supported by clear and convincing evidence. K.S.A. 2015 Supp. 38-2269(a). We determine whether such evidence could have convinced a rational factfinder that such facts were highly probable, *i.e.*, by clear and convincing evidence, when viewed in the light most favorable to the State. *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008). In making this determination, we do not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. 286 Kan. at 705.

*Analysis*

In the present case, the district court found Mother unfit based on the following statutory factors:

- KVC made numerous and reasonable efforts to try to reintegrate J.H.E. with Mother but those reasonable efforts did not succeed, satisfying K.S.A. 2015 Supp. 38-2269(b)(7).
- Mother failed to adjust her circumstances, conduct, or conditions, to meet the needs of J.H.E., satisfying K.S.A. 2015 Supp. 38-2269(b)(8).
- Mother failed to maintain regular visits with J.H.E., satisfying K.S.A. 2015 Supp. 38-2269(c)(2).
- Mother failed to complete the tasks of her reintegration plan during the time that plan was in effect, satisfying K.S.A. 2015 Supp. 38-2269(c)(3).

We first determine whether the district court's findings of unfitness were supported by clear and convincing evidence. We find Mother's argument that the State failed to prove she was unfit unpersuasive. As previously analyzed, J.H.E. was placed in DCF custody due to concerns that he was in the home with drugs, drug paraphernalia and other dangerous articles within reach, and concerns about criminal activity in the home. The district court also found it concerning that the whereabouts of J.H.E. were unknown at the time of the temporary custody hearing. Mother took J.H.E. to the Potawatomi Indian Reservation in Mayetta, Kansas. She refused to hand J.H.E. over to DCF. Additionally, several people testified that the relationship between Mother and Father was concerning due to the domestic violence by Father toward Mother. Mother and Father had frequent physical altercations—Father tried to push Mother out of a moving vehicle and threatened to kill her. Moreover, witnesses testified that Mother was required to take UAs and missed many. The district court noted: "She had two relapses during the course of the case. While she referred to those relapses as mere slip-ups, she talked about using

9

meth several times a day for a few months, so these were serious relapses. She has not pursued formal drug treatment."

Based on the aforementioned facts, clear and convincing evidence supports the district court's determination that Mother was unfit by reason of conduct or condition, which rendered her unfit to care properly for J.H.E.

This court's next step is to determine whether clear and convincing evidence supported the district court's determination that Mother's behavior was unlikely to change in the foreseeable future. See K.S.A. 2015 Supp. 38-2269(a). The term "foreseeable future" is measured from the child's perspective, and takes into account a child's perception of time. *In re S.D.*, 41 Kan. App. 2d 780, 790, 204 P.3d 1182 (2009). This court has considered periods of time as short as 7 months to be the foreseeable future from a child's perspective. 41 Kan. App. 2d at 790. A court may predict a parent's future unfitness based on his or her past history. *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982).

Mother contends the district court failed to make specific findings to support its legal conclusion that Mother's conduct was unlikely to change in the foreseeable future.

Prior to reaching this decision, the district court heard testimony that at 3 years old, J.H.E. had been in out-of-home placement for 19 months—over half of his life. Here, the district court made the requisite findings. The district court found that J.H.E. had been waiting on Mother for almost 2 years at the time of the hearing. The district court held that the court can look to the past to predict the future and that Mother would not be in a position to adequately and safely care for her child anytime in the immediate or foreseeable future. It concluded: "The [child has] waited long enough and do[es] not deserve to wait any longer for permanency."

The district court may predict Mother's future unfitness based on her history. We find clear and convincing evidence supported the district court's determination Mother's behavior was unlikely to change in the foreseeable future.

Finally, we consider whether the district court correctly found that terminating Mother's parental rights was in J.H.E.'s best interests. See K.S.A. 2015 Supp. 38-2269(g)(1).

Because it hears the evidence directly, the district court is in the best position to determine the best interests of the child, and an appellate court cannot overturn it without finding an abuse of discretion. *In re K.P.*, 44 Kan. App. 2d 316, 322, 235 P.3d 1255 (2010). An abuse of discretion occurs when the district court acts in an unreasonable, fanciful, or arbitrary manner, or when the court bases its decision on an error of fact or an error of law. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013).

The district court found Mother was not likely to change her conduct or condition in the future. Mother did not pursue formal drug treatment even though she had serious relapses and insinuated that using methamphetamine was how she dealt with stress. Mother made no effort to extricate herself from her relationship with Father despite the ongoing concerns of domestic violence between the two. After testifying about the violence she experienced, Mother stated her intentions to stay with Father because she wanted her family together. Mother also missed numerous visits with her son. When Mother would move forward with visits and her time was expanded, KVC found she was back with Father, and the visits were pulled back. The district court found it was in the best interests of J.H.E. to terminate Mother's parental rights, and we find no abuse of discretion in that ruling.

Affirmed.

11