NOT DESIGNATED FOR PUBLICATION

No. 115,777

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of M.P., C.P., and D.P.

MEMORANDUM OPINION

Appeal from Barton District Court; MIKE KEELEY, judge. Opinion filed December 23, 2016. Affirmed.

*Shannon S. Crane*, of Hutchison, for appellant.

*Rita A. Sunderland*, assistant county attorney, and *Douglas A. Matthews*, county attorney, for appellee.

Before HILL, P.J., PIERRON and GARDNER, JJ.

*Per Curiam*: K.P., the biological father of M.P., C.P., and D.P., appeals from the district court's order terminating his parental rights to all three of the children. Parental rights may be terminated only in circumstances set out by statute and only when clear and convincing evidence supports termination.

On appeal, Father argues the evidence presented at his termination hearing was insufficient to merit termination of his parental rights and it was not in the best interests of the children to have his parental rights terminated. The district court found Father was unfit because at least 4 of the statutory factors for determining unfitness under K.S.A. 2015 Supp. 38-2269 applied to Father. Among the statutory factors deemed applicable by the district court were: (1) use of illegal drugs that hindered Father's ability to care for the

1

children, (2) emotional neglect of the children, (3) conviction of a felony and imprisonment, and (4) the children had been in extended out-of-home placement.

Father's termination hearing took place in February 2016. The evidence presented at the termination hearing indicated Father was currently incarcerated for possession of methamphetamine with intent to distribute and possession of a firearm by a felon. Father had been incarcerated since June 2014, and would not be released until November 2018. During the arrest that led to Father's incarceration, the children were found near loose marijuana, methamphetamine, and weapons. The evidence presented also established Father had been convicted of various crimes 26 times since 2000, and had received multiple disciplinary violations while incarcerated. At the time of the termination hearing the children had not seen Father since June 2014, when they were approximately 2 to 3 years old, and would not have been able to see Father again until late 2018, when they would be approximately 6 to 7 years old. Thus, at the time of the termination hearing, Father had not had physical contact with his children for over 18 months and likely would not have physical contact with them for 32 more months. The children have remained in State custody since Father's arrest in June 2014.

Though incarcerated, Father maintained some level of contact with the children. He called the children approximately once a month when his mother was watching the children. Father also wrote letters to the children once a month and had his mother sell his car and use the proceeds to buy the children birthday and Christmas presents. However, due to Father's incarceration he was unable to complete several portions of his case plan, such as receiving mental health, drug, and alcohol evaluations, and then complying with orders/recommendations from those evaluations. Father was also uncooperative during an in-person meeting with social workers from St. Francis Community Services (St. Francis), causing that meeting to be prematurely terminated by prison officials.

The termination of parental rights is a serious matter. A review of the entire record in this case reveals clear and convincing evidence that Father was unfit as a parent, that the conditions leading to that finding were unlikely to change in the foreseeable future, and that termination of Father's parental rights was in the best interests of the children. Therefore, we affirm the district court's judgment.

Because Father challenges the sufficiency of the evidence supporting termination of his parental rights, and due to the fact-sensitive nature of these cases, the facts will be set out in detail. Father and Mother had three children together who are involved in this case—M.P. born in 2011 and twins D.P. and C.P. born in 2012. Mother also had another child, who was not biologically related to Father and is not part of this action, but who Father treated as one of his children. Mother voluntarily relinquished her parental rights on February 9, 2016, the day of Father's termination hearing. After the district court terminated Father's parental rights to all three children in February of 2016, the termination of parental rights actions regarding M.P., D.P., and C.P. were consolidated for appeal on April 26, 2016.

On June 19, 2014, petitions to have each child adjudicated as a child in need of care (CINC) were filed in Barton County. The petitions were based on a police report detailing a search warrant executed on Father's residence on June 17, 2014, at approximately 12:12 a.m. Inside the residence, police officers found methamphetamine, loose marijuana, a loaded pistol, and swords. The officers found C.P. and D.P. near the couch of the living room, with methamphetamine located on the table next to the couch, and loose marijuana on the couch itself. M.P. was found asleep on the master bed near loose marijuana. During a subsequent interview with Mother, she stated Father had been selling illegal narcotics out of the residence and that both she and Father used illegal narcotics. Mother stated that she did not live at Father's residence, but often stayed there with the children. The children were placed in State custody. Father was incarcerated on June 17, 2014.

A temporary custody hearing took place on June 20, 2014, where the district court ordered the children to be removed from the home and placed in the temporary custody of the Kansas Department of Children and Families (DCF). At this hearing the court found that both the drugs and weapons located in the home during the raid were within the reach of the children, making the children likely to sustain harm if not immediately removed. The court ordered Father to submit to drug and alcohol evaluations and U.A. tests. The court also granted DCF discretion to conduct supervised visits with Mother or Father, but prohibited visitation in the home until further notice. Father was unable to have supervised visits with the children because he was incarcerated.

On July 29, 2014, the children were adjudicated as CINC. At this hearing the district court ordered the children to remain in DCF custody. The court ordered that Father could have supervised visits with the children at the discretion of St. Francis. However, Father was unable to have supervised visits with the children because he was incarcerated.

On January 20, 2015, Father appeared in district court through his court-appointed attorney for a review hearing. At the hearing, the court ordered that Father be allowed to write letters to the children, as long as the letters passed through St. Francis and were deemed appropriate. St. Francis was granted discretion to terminate the letters if they were found to be inappropriate. Father wrote the children letters approximately once a month. The district court scheduled a permanency hearing for April of 2015.

The first permanency hearing was held on April 21, 2015. The district court found that reintegration with either parent was no longer a viable goal and ordered the children to remain in DCF custody. The court also ordered the appointment of an educational advocate for the children.

4

On November 16, 2015, the State filed a motion to terminate the parental rights of both Mother and Father. Attached to the motion to terminate, and incorporated by reference by the district court, were the points of severance prepared by St. Francis. After this filing, the State discovered Father had been relocated to a different correctional facility. A second filing of the motion to terminate was sent to Father's new place of incarceration at the Hutchinson Correctional Facility (Hutchinson) on December 7, 2015. The points of severance prepared by St. Francis indicated that, in the opinion of St. Francis, several of the factors found in K.S.A. 2015 Supp. 38-2269 applied to Father making him unfit, he was likely to remain unfit for the foreseeable future, and termination of his parental rights was in the best interests of the children.

On February 9, 2016, the district court held a hearing to consider the State's motion to terminate Father's parental rights. Prior to this hearing Mother voluntarily relinquished her parental rights to all three children. It should be noted that during the hearing the court took judicial notice of Father's Barton County criminal cases No. 14 CR 252 and No. 2009 CR 149, though they do not appear in the record.

At the hearing, Father testified he was currently incarcerated at Hutchinson for selling illegal drugs and he did not expect to be released until November 2018. Father stated he had not seen his children since June 17, 2014, because of his incarceration. Additionally, Father testified he had not provided financial support to his children since the 2014/2015 tax year, when it was taken out of his income tax refund.

Father testified that during his incarceration he had maintained contact with the children via phone and through monthly letters he had written. Father stated that he was only able to communicate with the children via phone when his mother was watching the children, which occurred approximately once a month. These phone conversations were limited to roughly 5 minutes, due to the age of the children and their attention spans. Father's conversations with the children focused on current events and what the children

5

were doing in school or doing with Father's mother that day. Father stated the purpose of the phone calls and letters was to maintain a relationship with the children and to form a bond with them.

Additionally, Father testified he had completed two vocational certificates while incarcerated and had recently enrolled in a paralegal studies program. However, Father stated he was unable to enroll in parenting classes or drug treatment because his expected release date was too far away and inmates with closer release dates received priority over him.

Father also testified that he resorted to selling drugs as a way to provide for his family and to make ends meet because Mother did not work. Father admitted the children had been physically neglected by Mother while they lived in his home, as he would often return from work to find the children unfed or with dirty diapers. Father stated he often skipped work to make sure his children were fed and properly cared for. Father had a job performing manual labor, but he did not state where he had been employed or what industry he had been employed in.

Chelsi Newell, a family support worker for St. Francis, testified at the hearing. Newell was involved with Father's case and performed a "worker-parent" visit with Father while he was incarcerated at the Norton Correctional Facility on September 25, 2015. Newell testified that Father was defiant throughout this meeting and that it ultimately ended negatively. Newell was attempting to go over the case plan with Father and needed Father to sign a document stating his goals in the case plan. Father initially refused to sign the paper, crumpled it up, and threw it on the floor. Father ultimately signed the case plan but remained argumentative throughout the process. The visit was cut short by prison officials due to Father's actions and demeanor. The entire meeting lasted approximately 10 minutes. Father was given 2 warnings for talking disrespectfully to Newell before the visitation was terminated. Subsequently, Father's actions during the

6

meeting resulted in 7 disciplinary reports. Newell testified that Father would be unable to complete several of the objectives in his case plan due to his incarceration, such as drug, alcohol, and mental health evaluations and treatment.

Michelle Williams, a supervisor at St. Francis who oversaw Father's case, testified that since the children had been in DCF custody beginning June 20, 2014, Father had not had any visits with the children. Williams stated that St. Francis had periodic contact with Father throughout the termination and CINC proceedings. St. Francis met with Father in person on June 27, July 25, August 1, September 12, and October 14, of 2014, while Father was incarcerated in Barton County. St. Francis also had phone contact with Father on January 26, 2015, and March 16, 2015, and mailed Father paperwork in June 2015. Thus, St. Francis had communicated with Father at least 7 times prior to the termination hearing. Williams also testified that upon Father's release in November 2018, reintegration with the children might take up to 1 year.

Finally, N. W., Father's mother and the children's grandmother, testified that Father was able to talk to some of the children via phone when they visited her, which occurred approximately twice a month. N.W. testified that C.P. and D.P. were in a different foster home from M.P., so she did not always have all of the children at the same time, and thus, Father was only able to talk to each child approximately once a month. N.W. stated that the children recognized pictures of Father, recognized his voice, and M.P. often stated she wanted to visit Father. N.W. also read to the children the letters that Father had sent. Finally, N.W. testified that Father had a vehicle he instructed her to sell, and he directed her to use the proceeds from the sale to buy specific presents for the children on their birthdays and at Christmas.

After the above testimony was presented, the district court took a 30-minute recess to review the criminal files it had taken notice of, the letters Father had written to the children, and to consider the case. Upon return, the court ordered the termination of

7

Father's parental rights. The court considered the factors in K.S.A. 2015 Supp. 38-2269(b)-(c) and found that multiple factors applied, making Father unfit. The court then found that Father's unfitness was unlikely to change in the foreseeable future. Finally, the court considered the physical, mental, and emotional needs of the children and found it was in the children's best interests to terminate Father's parental rights.

Father filed his notice of appeal April 12,, 2016, which was not timely. This court granted Father the permission to docket an appeal out of time and granted leave to docket the appeal instanter.

*Standard of Review*

The Kansas Legislature has specified that the State must prove "by clear and convincing evidence that the child is a child in need of care." K.S.A. 2015 Supp. 38-2250. In addition to child in need of care adjudications, the clear and convincing evidence standard of proof applies to all termination of parental rights cases. K.S.A. 2015 Supp. 38-2269(a).

> "[W]hen an appellate court reviews a trial court's determination that a child is in need of care, it should consider whether, after review of all the evidence, viewed in the light most favorable to the State, it is convinced that a rational factfinder could have found it highly probably, *i.e.*, by clear and convincing evidence that the child was a CINC." *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008).

See *In re K.W.*, 45 Kan. App. 2d 353, 354, 246 P.3d 1021 (2011) (applying standard of review).

In making this determination, an appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re B.D.-Y.*, 286 Kan. at 705.

*Does Clear and Convincing Evidence Support the District Court's Determination that Father was Unfit under K.S.A.* 2015 Supp. *38-2269?*

If a child is adjudicated a CINC, parental rights may be terminated "when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2015 Supp. 38-2269(a). The Revised Kansas Code for Care of Children, K.S.A. 38-2201 *et seq.*, lists a number of nonexclusive factors the district court must consider in determining a parent's unfitness. See K.S.A. 2015 Supp. 38-2269(b) and (c). Any one of the factors "may, but does not necessarily, establish grounds" for terminating a parent's rights. K.S.A. 2015 Supp. 38-2269(f). The district court is not limited only to the statutory factors in making a determination of unfitness. K.S.A. 2015 Supp. 38-2269(b).

Here, the district court found Father unfit due to his lengthy criminal history, his persistent drug use, his current incarceration for a felony, his presumptive release date, and the impact of these events on M.P., C.P., and D.P. Based on this, the court found the following factors applied:

> K.S.A. 2015 Supp. 38-2269(b)(3)—use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child;
> K.S.A. 2015 Supp. 38-2269(b)(4)—physical, mental or emotional abuse or neglect or sexual abuse of a child;
> K.S.A. 2015 Supp. 38-2269(b)(5)—conviction of a felony and imprisonment;
> K.S.A. 2015 Supp. 38-2269(b)(8)—lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child; and

K.S.A. 2015 Supp. 38-2269(b)(9)—whether the child has been in extended out of home placement as a result of actions or inactions attributable to the parent and one or more of the factors listed in subsection (c) apply.

Father argues that the appropriate public or private agencies failed to make reasonable efforts to rehabilitate the family, as required by K.S.A. 2015 Supp. 38-2269(b)(7).

Next, we must determine whether clear and convincing evidence supported the termination of Father's rights. The first step is to determine whether the district court's findings of unfitness were supported by clear and convincing evidence.

*K.S.A.* 2015 Supp. *38-2269(b)(3)—Use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child.*

The district court stated that Father had an extensive criminal record, including his current incarceration for distribution and possession with intent to distribute methamphetamine in 2014, as well as 26 other convictions, including drug or alcohol related convictions for driving under the influence, possession of marijuana and paraphernalia in 2004, possession of methamphetamine in 2005, possession of drug paraphernalia in 2006, and possession of marijuana with intent to sell in 2009. The court stated that, based on Father's history of using alcohol and drugs it was likely he would continue to do so, given Father had multiple opportunities to quit after the birth of his children and prior to his present incarceration. Thus, it appears the court properly found that because of the young age of the children, Father's limited ability to interact with them, and Father's release date being years away, his substance abuse had rendered him unable to care for his children physically, emotionally, or mentally prior to and subsequent to his incarceration.

In his brief, Father does not appear to directly address the evidence regarding this factor, or why it is insufficient. Regardless, clear and convincing evidence supports the district court's finding. The police report detailing the events surrounding Father's most recent arrest indicated that when police entered Father's residence to conduct the search warrant C.P. and D.P. were located on a couch near marijuana and methamphetamine, while M.P. was asleep on a bed next to loose marijuana. After the search warrant was conducted, Mother reported that Father was selling illegal narcotics from the home and had been using illegal narcotics. At Father's termination hearing he admitted he was currently incarcerated for selling drugs. Additionally, police records contained in the St. Francis court report indicated Father had been, at a minimum, convicted of: (1) furnishing alcohol to minors in 2004, (2) possession of drug paraphernalia in 2005, (3) possession of opiates, opium or narcotics in 2005, (4) possession of hallucinogens with intent to distribute in 2009, (5) disorderly conduct in 2010, and (6) domestic battery; physical contact by family member in rude manner in 2010.

Additionally, Father testified at the termination hearing that he had not seen any of his children in person since June 17, 2014, and would not be able to do so until his anticipated release date in November 2018. Father also testified he had not provided financial support for his children since the "tax year [of] 2014/2015," which he believed was paid with his income tax refund. Additionally, Father admitted the children were neglected by Mother while he was at work, in that they were often unfed and left with dirty diapers. All of these facts indicated Father had used drugs for a prolonged period of time, which had resulted in multiple arrests, convictions, and periods of incarceration, which limited his ability to care for the children.

Based on these facts, a rational factfinder could have found it highly probable that Father's use of intoxicating liquors or narcotic or dangerous drugs rendered him unable to care for the ongoing physical, mental, or emotional needs of the children.

11

*K.S.A.* 2015 Supp. *38-2269(b)(4)—Physical, mental or emotional abuse or neglect or sexual abuse of a child.*

The district court found that subsection (b)(4) applied because Father's drug use and absence from the home amounted to emotional neglect of the children. The court also found that Father was at least partially responsible for the physical neglect of the children that was blamed on Mother—*i.e.* the times when the children did not have food or clean diapers. Father argues in his brief that the court's finding was not supported by substantial competent evidence. Father argues, instead, that Mother neglected the children and that he often took time off from work to care for them. He further argues that, although illegal drugs and guns were found in the house, there was no evidence the children had access to the drugs or guns, and there was no evidence the children were malnourished, mistreated, or denied proper medical care.

Father is correct that the record does not indicate the children were malnourished or ever denied medical care. However, at the termination hearing Father admitted the children were physically neglected by Mother and merely asserts he was not to blame because he took care of the children when he was not working. Additionally, the police record detailing the events of the Father's 2014 arrest clearly indicated all three children were found next to loose marijuana. Further, there was methamphetamine on the table next to the couch, which the district court found was within reach of the children. Finally, a loaded pistol and several swords were found in the residence, though no information on their accessibility to the children was present in the record.

Based on these facts, a rational factfinder could have found it highly probable that Father physically, mentally, or emotionally neglected the children.

*K.S.A.* 2015 Supp. *38-2269(b)(5)—Conviction of a felony and imprisonment.*

The district court took judicial notice of the Barton County criminal cases No. 14 CR 252 and No. 2009 CR 149, though they do not appear in the record. The court reviewed the criminal cases and criminal files prior to making its decision. The court found, and it is uncontested, that Father was convicted of a felony, that he had been incarcerated since June 2014, and that he would not be released until November 2018.

Based on these facts, a rational factfinder could have found it highly probable that Father was unfit due to his felony conviction and imprisonment.

*K.S.A.* 2015 Supp. *38-2269(b)(8)—Lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child.*

The district court found that subsection (b)(8) applied to the present case. At the termination hearing, the district court stated that subsection (b)(8) "semi-applies" because Father continued to sell and use drugs when he was not incarcerated, despite his lengthy criminal history. Father appears to address the applicability of this factor by asserting that "the Court must find that under no reasonable circumstances can the welfare of the child be served by a continuation of the parent-child relationship." Father also argues that "a Court must weigh the benefits of permanency for the child without the presence of his or her parents against the continued presence of the parent and the accompanying issues created for the child's life." It does not appear that Father challenges the sufficiency of the evidence supporting the district court's finding regarding subsection (b)(8) in any other way.

As indicated above, the record before the district court showed that Father had been convicted of crimes 26 times since 2000. Additionally, the State presented evidence that Father was unfit due to his failure to complete case plan tasks or continue to provide

13

ongoing financial support. Newell testified Father was not able to complete several of the tasks required in his case plan. Specifically, Father has not been able to take any parenting or drug treatment classes because of his incarceration. However, Father testified he was unable to enroll in these classes because enrollment in these programs is based on the proximity of each inmate's anticipated release date, and Father's release date was too far away to allow enrollment. Father also testified that during his last in person meeting with member of Saint Francis, the meeting was terminated by prison personnel due to Father's refusal to cooperate with the Saint Francis worker. However, Father had enrolled in, and completed, two vocational training programs and was currently enrolled in a paralegal studies program, which he believed will help him find work and avoid drugs upon his release.

Based on these facts, a rational factfinder could have found it highly probable that Father was unfit due to his lack of effort to change his conduct and conditions.

*K.S.A.* 2015 Supp. *38-2269(b)(9)—Whether the child has been in extended out of home placement as a result of actions or inactions attributable to the parent and one or more of the factors listed in subsection (c) apply.*

When the child is not in the physical custody of a parent the district court must consider, but is not limited to, the additional factors for determining unfitness found in subsection (c). K.S.A. 2015 Supp. 38-2269(c). The children were placed in DCF custody in June 2014 and had not been returned to Father's custody at any time since their removal from the home, due to Father's incarceration. Thus, the children had been in State custody since Father's arrest in June 2014, a period of approximately 28 months as of the date of the termination hearing. Additionally, the children's Mother had voluntarily relinquished her parental rights February 9, 2016. Thus, the children were not in the physical custody of a parent for an extended period and the court was required to consider the factors in subsection (c).

14

The district court properly found that subsection (b)(9) applied because the children were in extended out-of-home placement, and not in the physical custody of a parent, and, as a result, the court expressly considered the factors in subsection (c), though it did not state which factors, if any, applied. Thus, the court properly considered the factors in subsection (c), as required by K.S.A. 2015 Supp. 38-2269(c). Though the court did not state that any of the factors in subsection (c) applied, Father may still be found unfit because any one factor found in K.S.A. 2015 Supp. 38-2269(b) or (c) "standing alone may, but does not necessarily, establish grounds for termination of parental rights." K.S.A. 2015 Supp. 38-2264(f). Thus, the court was only required to consider subsection (c), which it did, and the termination of parental right can be supported by finding any factor in subsection (b) applied.

Though the district court did not state what, if any, factors found in subsection (c) applied, the St. Francis report prepared for the State's motion to terminate parental rights indicated that two factors in subsection (c) applied. St. Francis stated that K.S.A. 2015 Supp. 38-2269(c)(2), failure to maintain regular visitation or contact, applied because Father had not seen his children in person since June, 2014, had limited phone calls with the children, had written the children letters, and would not physically see the children until he was released in November 2018. St. Francis also stated that K.S.A. 2015 Supp. 38-2269(c)(4), failure to pay a reasonable portion of the cost of care, applied because Father was ordered to pay $400 a month in child support and owed the State $2,509 as of October, 2015.

Based on these facts, a rational factfinder could have found it highly probable that Father was unfit due to multiple factors found in subsection (c).

*The appropriate public or private agencies made reasonable efforts to rehabilitate the family, as required by K.S.A. 2015 Supp. 38-2269(b)(7).*

15

Father argues the appropriate public or private agencies failed to make reasonable efforts to rehabilitate the family, as required by K.S.A. 2015 Supp. 38-2269(b)(7). This court has stated before that K.S.A. 2015 Supp. 38-2269(b)(7) "clearly impose[s] an obligation upon the relevant social service agencies to expend reasonable efforts toward reintegrating the child with his or her parents." *In re J.R.*, No. 104,975, 2011 WL 2175953, *5 (Kan. App. 2011) (unpublished opinion). However, this obligation does not require a "herculean effort" by an agency to lead the parent through the responsibilities of the reintegration plan. 2011 WL 2175953, at *5. An agency is not required to exhaust any and all resources to rehabilitate a parent, an agency must pursue rehabilitation efforts with the best interests of the child in mind, recognizing that a child's perception of time differs from that of an adult. 2011 WL 2175953, at *5.

Williams testified that between June 2014 when Father was arrested, and September 2015, St. Francis met with Father in person five times and had phone contact with Father twice. Additionally, Newell testified that St. Francis' contact with Father and progress on the case plan were largely stifled by Father's refusal to cooperate in the face-to-face meeting on September 25, 2015. In that meeting, Father crumpled up a document containing the case plan goals, threw the document on the ground, and was generally argumentative. Finally, Newell testified that Father was unable to comply with many portions of the rehabilitation program because he was incarcerated and his release date was too far away. Thus, many of the required tasks had to be placed on hold indefinitely.

Based on these facts, a rational factfinder could have found it highly probable that the appropriate agencies made reasonable efforts to rehabilitate the family.

16

*Clear and Convincing Evidence Supports the District Court's Determination that Father's Unfitness was not Likely to Change in the Foreseeable Future.*

Next, assuming one or more of the above factors established Father's unfitness by clear and convincing evidence, we must determine if Father's unfitness was likely to change in the foreseeable future. K.S.A. 2015 Supp. 38-2269(a),(f). The district court expressly found there was clear and convincing evidence that Father's unfitness was unlikely to change in the foreseeable future. At the termination hearing, the court seemed to base this finding on Father's extensive criminal history and the fact that Father would not be released from prison for 2 1/2 years, at which point he would not have seen his children for 4 1/2 years. On appeal, Father principally argues whether he was likely to remain unfit was irrelevant because the State had not shown that he was unfit by clear and convincing evidence.

A district court may predict a parent's future unfitness based on his or her past history. *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982). Moreover, the term "foreseeable future" is measured from the child's perspective and takes into account a child's perception of time. *In re S.D.*, 41 Kan. App. 2d 780, 790, 204 P.3d 1182 (2009). This court has considered periods of time as short as 7 months to be the foreseeable future from a child's perspective. 41 Kan. App. 2d at 790.

Here, ample evidence supports the district court's determination that Father was likely to remain unfit in the foreseeable future. First, Father had an extensive criminal record—26 convictions—which indicated he had prior opportunities to change and failed to do so. Second, Father had received 9 disciplinary reports while he was incarcerated between June 2014 and February 2016, which is further evidence of his inability to change. Third, though Father had contact with the children through phone calls and letters, he had not seen the children since June 2014, a period of approximately 28 months, and would not be allowed to physically see them until his release in November

17

2018. C.P. and D.P. were almost 2, and M.P. was approximately 3, when they were removed from Father's home. At the time of the termination hearing, the children were 3, 3, and 4, respectively. At the time of Father's expected release, 33 months from the termination hearing, the children would be approximately 6, 6, and 7. Further, Williams testified the children would not be reintegrated immediately upon Father's release, in fact, the process could take over a year, making the children 7, 7, and 8. The children would have been without their Father for approximately 1/2 to 2/3 of their lives by the time Father was released from prison and integration could be completed. Thus, evidence was presented that Father was unlikely to change his conduct in the foreseeable future and his involvement or status with the children was unlikely to change in the foreseeable future, as measured from the perspective of the children.

Based on these facts, a reasonable factfinder could have determined that Father's unfitness was unlikely to change in the foreseeable future.

Finally, Father argues terminating his parental rights was not in the best interests of the children because of the bond Father had developed with the children through his phone calls and letters.

Because it hears the evidence directly, the district court is in the best position to determine the best interests of the child, and an appellate court cannot overturn it without finding an abuse of discretion. See *In re Marriage of Rayman*, 273 Kan. 996, 999, 47 P.3d 413 (2002); *In re K.P.*, 44 Kan. App. 2d 316, 322, 235 P.3d 1255 (2010). An abuse of discretion occurs when the district court acts in an unreasonable, fanciful, or arbitrary manner, or when the court bases its decision on an error of fact or an error of law. *Northern Natural Gas Co. v. ONEOK Field Services*, Co., 296 Kan. 906, 935, 296 P.3d 1106 (2013).

Father cites no legal authority to support his argument. Here, ample evidence regarding Father's criminal history, drug use, the children's proximity to drugs at the time of Father's arrest, Father's incarceration, and the length of Father's physical absence all indicate the district court's decision was not unreasonable, fanciful, or arbitrary. Further, Father has not alleged any error of fact or law by the district court. Thus, the district court did not abuse its discretion in determining termination of Father's parental rights was in the best interests of the children.

Because of all the evidence and findings made above, we affirm the district court's decision.

Affirm.