NOT DESIGNATED FOR PUBLICATION

No. 115,182

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JORDAN ROBERTS REYNOLDS-TAYLOR,
*Appellant*.


MEMORANDUM OPINION

Appeal from Shawnee District Court; NANCY E. PARRISH, judge. Opinion filed July 14, 2017. Affirmed.

*Heather Cessna*, of Kansas Appellate Defender Office, for appellant.

*Kendall Kaut*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ATCHESON, P.J., STANDRIDGE and SCHROEDER, JJ.


*Per Curiam*:  Defendant Jordan R. Reynolds-Taylor pleaded guilty in Shawnee County District Court to one count of aggravated indecent liberties with a child between 14 and 16 years old. Although the district court granted a downward durational departure, it denied Reynolds-Taylor's motion for a dispositional departure to probation. Reynolds-Taylor appeals that ruling. We find no abuse of discretion in the decision and affirm it. Reynolds-Taylor also contends the district court was not required to place him on lifetime postrelease supervision and, therefore, erred in doing so. This court has repeatedly rejected that argument—correctly in our view. So we affirm that ruling, as well.

1

When Reynolds-Taylor was 19 years old, he met B.E.P., a 14-year-old girl, on social media. They began "dating" at some point. B.E.P.'s mother, however, warned Reynolds-Taylor to stay away from her daughter. Nonetheless, in February 2015, B.E.P. arranged with Reynolds-Taylor to sneak out of the house one night and meet him. During their get-together, they had sexual relations. The encounter came to light, and Reynolds-Taylor eventually admitted to investigating law enforcement officers that he had sex with B.E.P.

As we indicated, Reynolds-Taylor pleaded guilty to one count of aggravated indecent liberties with a child between 14 and 16 years old, a severity level 3 person felony in violation of K.S.A. 2016 Supp. 21-5506(b)(1). Reynolds-Taylor had a juvenile adjudication for arson arising from his participation in the destruction of a motor vehicle, apparently as an ill-conceived prank. He also had an unresolved juvenile proceeding for a sex offense.

At sentencing, Reynolds-Taylor agreed he had a criminal history of G and, therefore, faced a guidelines sentence between 68 and 77 months in prison with a presumption that he be incarcerated. Reynolds-Taylor sought both a downward durational departure and a dispositional departure to probation. He based his request for leniency largely on his learning disabilities, a low IQ, related cognitive deficits, and the comparatively limited harm to B.E.P.

The district court heard testimony and received reports from two mental health professionals who had examined Reynolds-Taylor. A licensed clinical social worker, who had met often with Reynolds-Taylor as a result of the juvenile court cases, described him as having an IQ approaching the level for retardation and significant learning disabilities. The social worker said that as a result, Reynolds-Taylor lacks maturity and tends to exercise extremely poor judgment. According to the social worker, Reynolds-Taylor's

2

emotional peers at the time of this crime would have been young teenagers. Given that constellation of limitations, the social worker believed Reynolds-Taylor would benefit from a structured probation with continuing counseling.

The district court also heard from a clinical psychologist who focused on evaluating Reynolds-Taylor as a recidivist sex offender. The psychologist found Reynolds-Taylor to have an elevated risk of reoffending and suggested he would be an appropriate candidate for a cognitive-behavioral offender treatment program. The psychologist also noted Reynolds-Taylor's antisocial behaviors and limited impulse control. Although the psychologist reported Reynolds-Taylor "could be successful on probation," that opinion was premised on his participation in a rigorous treatment program coupled with close supervision of his activities outside the program. The psychologist's opinion, then, might be fairly characterized as guarded.

The district court ultimately denied the motion for a dispositional departure to probation but granted a durational departure and sentenced Reynolds-Taylor to serve 40 months in prison followed by lifetime postrelease supervision. In granting the departure sentence, the district court cited Reynolds-Taylor's low intellectual functioning, the comparatively small gap in age between him and the victim, and his acceptance of responsibility for the crime. The district court also recommended Reynolds-Taylor be considered for placement at Larned State Hospital for treatment. Reynolds-Taylor has appealed.

For his first issue, Reynolds-Taylor challenges the district court's decision to deny his motion for probation—a departure sentence from presumptive imprisonment. We review the denial of dispositional departures for abuse of judicial discretion. *State v. Floyd*, 296 Kan. 685, Syl. ¶ 1, 294 P.3d 918 (2013). A district court exceeds that discretion if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations,

3

or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012).

Reynolds-Taylor presented evidence during his sentencing hearing that supported mitigation of the presumptive guidelines sentence. And the district court imposed a shorter sentence than the guidelines called for. The district court did not misperceive the law, including the scope of its authority to act. Nor did it misunderstand the relevant facts. Reynolds-Taylor does not argue otherwise. Rather, he says that in light of the evidence and the law, the district court's decision to deny him probation was so far afield as to be judicially unreasonable. We disagree.

Although Reynolds-Taylor offered reasons to warrant lenience, they were not so plain or one-sided enough as to demand he be placed on probation. First, of course, the crime was a serious one. See *State v. Mossman*, 294 Kan. 901, 910-11, 281 P.3d 153 (2012). Reynolds-Taylor had a criminal history, albeit based on a juvenile adjudication, entailing arson, also a significant offense. And he had pronounced mental health issues. Those issues presented the district court with a distinctly mixed bag in considering probation—they mitigated culpability to some degree but suggested an ongoing risk of law-breaking because of poor judgment and impulse control.

Taking account of all of the circumstances, we necessarily conclude that other district courts would have denied Reynolds-Taylor's request for probation. Accordingly, the district court did not err in ruling as it did.

For his second point, Reynolds-Taylor contends that K.S.A. 2016 Supp. 22-3717(d) does not impose mandatory lifetime postrelease supervision for defendants convicted of aggravated indecent liberties with a child. He says the statutory language

4

permits 36 months of postrelease supervision. Several months after Reynolds-Taylor filed his appellate brief, this court rejected the same statutory argument in *State v. Herrmann*, 53 Kan. App. 2d 147, 384 P.3d 1019 (2016), *petition for rev. filed* December 19, 2016. We find *Herrmann* to be well considered and dispositive of Reynolds-Taylor's point. We join many other panels in that respect. See, *e.g.*, *State v. Sananikone*, No. 115,340, 2017 WL 2494952, at *1 (Kan. App. 2017) (unpublished opinion). As the panel in *Sananikone*, 2017 WL 2494952, at *1, explained:

> "K.S.A. 22-3717(d)(1)(G) is the most specific [statutory] provision, and it plainly imposes mandatory lifetime postrelease supervision for persons convicted of specified sex offenses, including attempted aggravated indecent liberties with a child, committed after July 1, 2006. The introductory language in K.S.A. 22-3717(d)(1) carves out subsection (d)(1)(G) from the more general provisions on postrelease supervision in subsections (d)(1)(B) and (d)(1)(D). This court considered and rejected the same argument Sananikone makes in *State v. Herrmann*, 53 Kan. App. 2d 147, 152-54, 384 P.3d 1019 (2016), *petition for rev. filed* December 19, 2016. We find the detailed analysis in *Herrmann* persuasive and readily adopt it. That disposes of Sananikone's first point."

The reasoning of *Herrmann* and of those cases relying on it, such as *Sananikone*, also disposes of Reynolds-Taylor's contention adversely to him.

Having considered both issues Reynolds-Taylor has raised, we find no error in the district court's sentencing of him.

Affirmed.

5